SCHANZ v NEW HAMPSHIRE INSURANCE COMPANY

Docket No. 95127. Submitted November 3, 1987, at Lansing. Decided
January 4, 1988. Leave to appeal applied for.

An office building owned by plaintiffs, George P. Schanz and
Linda K. Schanz, was destroyed by fire. Defendant, New Hamp-
shire Insurance Company, insured the building for $585,000,
ninety percent of its replacement cost value, an amount deter-
mined by defendant as a result of inspections and appraisals.
Defendants paid plaintiffs $524,682, and a balance of approxi-
mately $61,000 was to be paid plaintiffs upon rebuilding. Plain-
tiffs discovered that it would cost over $1.2 million to rebuild
and did not rebuild. Plaintiffs then brought an action in the
Saginaw Circuit Court based on defendant's allegedly negligent
appraisal of the replacement cost value of the building. The
jury returned a verdict in plaintiffs' favor for $739,784 and the
trial court, Robert S. Gilbert, J., entered a judgment for
$729,784, reflecting plaintiffs' prior settlement with another
party. Defendant's motions for a directed verdict, judgment
notwithstanding the verdict, new trial, or remittitur were
denied. Defendant appealed.

The Court of Appeals *held:*

1. The trial court did not err in denying defendant's motions.
The trial court did not err in finding that defendant owed a
duty to plaintiffs to exercise reasonable care in determining the
replacement cost coverage under the policy issued to plaintiffs.

2. It was harmless error for the trial court to allow defen-
dant's third-party complaint against the company which it

REFERENCES

Am Jur 2d, Judgments §§ 106 *et seq.*

Am Jur 2d, Motions, Orders, and Rules §§ 27, 28.

Am Jur 2d, Insurance §§ 1364-1366.

Am Jur 2d, Negligence §§ 32 *et seq.*; 64, 65, 281, 317 *et seq.*; 394 *et
seq.*

Practice and procedure with respect to motions for judgment not-
withstanding or in default of verdict under Federal Civil Proce-
dure Rule 50(b) or like state provisions. 69 ALR2d 449.

Necessity and sufficiency of insurer's demand, under fire insurance
policy, for examination of insured or his books or papers, or for
proofs of loss, certificates, or sworn statements. 4 ALR3d 631.

retained to perform an inspection of the building to be admitted into evidence.

3. The trial court correctly instructed the jury on the proper measure of damages.

Affirmed.

1. MOTIONS AND ORDERS — DIRECTED VERDICT — APPEAL.

The Court of Appeals, in reviewing a trial court's denial of a motion for a directed verdict, views the evidence in the light most favorable to the nonmoving party to determine whether a prima facie case was established; where material issues of fact upon which reasonable minds could differ exist, they are properly admitted to the jury.

2. MOTIONS AND ORDERS — JUDGMENT NOTWITHSTANDING THE VERDICT.

A court deciding a motion for judgment notwithstanding the verdict must view the evidence in the light most favorable to the nonmoving party and decide if the facts presented preclude judgment for the nonmoving party as a matter of law; where the evidence is such that reasonable persons could differ, the question is one for the jury and judgment notwithstanding the verdict is improper; a judgment notwithstanding the verdict may be granted only where there is insufficient evidence, as a matter of law, to make an issue for the jury.

3. INSURANCE — DUTY OF INSURER — INSPECTIONS BY INSURER.

The law does not impose a duty on insurers to inspect the premises of their insureds, although such an obligation may be undertaken.

4. NEGLIGENCE — ELEMENTS OF NEGLIGENCE.

A prima facie case of negligence requires proof of four elements: (1) a duty owed to plaintiff by defendant; (2) breach of the duty; (3) causation; and (4) damages.

5. NEGLIGENCE — DUTY.

The element of "duty" in a negligence action is an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct towards another; whether the law will impose such an obligation depends upon the relationship between the actor and the injured person; the court determines, as a matter of law, what characteristics must be present for a relationship to give rise to a duty and, thereafter, the jury determines whether the evidence establishes the elements of that relationship.

6. Appeal — Harmless Error — Negligence — Evidence.

   A plaintiff may not introduce allegations contained in the defendant's third-party complaint as evidence of negligence in the primary action; error in the admission of such evidence may be found to be harmless where such evidence is also introduced through other witnesses and the Court of Appeals determines that it would not be inconsistent with substantial justice to affirm the verdict for the plaintiff (MCR 2.613[A]).

7. Damages — Torts.

   A tortfeasor is liable for all injuries resulting directly from his wrongful act, whether foreseeable or not, provided that the damages are the legal and natural consequences of the wrongful act and are such that might have been reasonably anticipated in accordance with common experience in the usual course of events.

*van Benschoten, Hurlburt & Tsiros, P.C.* (by *Harvey E. van Benschoten* and *Lawrence A. Hurlburt*), for plaintiffs.

*Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald, P.C.* (by *John L. Hopkins, Jr.,* and *Dana L. Ramsay*), for defendant.

Before: Cynar, P.J., and Sawyer and J. A. Gillis,* JJ.

Cynar, P.J. Defendant, New Hampshire Insurance Company, appeals as of right from a March 3, 1986, judgment in favor of plaintiffs and an August 19, 1986, order denying its motions for a directed verdict, judgment notwithstanding the verdict, new trial, or remittitur.

This case arose out of the complete destruction by fire of plaintiffs' office building located at 971 Midland Road, Saginaw, Michigan, on February 12, 1979. At trial, the evidence indicated that in early June, 1976, plaintiffs, Dr. George Schanz, a

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

neurosurgeon, and his wife, Linda, purchased the office building. In order to close on the building and obtain a mortgage, plaintiffs were required to purchase fire and casualty insurance. They contacted their insurance agent, Michael Klein of the Phoenix Agency, Inc. Plaintiffs desired replacement cost value coverage.

However, neither the plaintiffs nor Klein were competent to appraise the building. Because most of plaintiffs' insurance was written with the Aetna Life & Casualty Insurance Company, Klein contacted Aetna and requested that an appraisal be done on the building. An Aetna employee, Eric Barkham, performed the appraisal and set the replacement cost value of the building at approximately $450,000.[1]

Barkham's appraisal figure was based upon his incorrect assumption that the building contained 2½ floors rather than the actual 3½ floors. Neither plaintiffs nor Klein were given a copy of the appraisal or advised as to the basis upon which the replacement cost value was calculated. Because of the time constraints involved with the mortgage, Klein utilized the $450,000 figure while shopping for an insurance binder required for the closing.

Meanwhile, Jay English, plaintiffs' accountant, asked Klein to determine whether Aetna's quoted premium on a $450,000 replacement cost value insurance policy was competitive. Klein discovered that defendant could provide the same coverage at a lesser rate.

Plaintiffs entered into a contract with defendant on a replacement cost, ninety percent coinsurance policy with a $450,000 limit on the replacement

[1] Klein's recollection of the $450,000 figure and Dr. Schanz's testimony to that amount was the only evidence concerning the initial appraisal figure. Barkham testified that he could not recall if his appraisal was $450,000. All of his appraisal records were missing.

cost value, subject to defendant's follow-up inspection. Under the coinsurance provision, plaintiffs were required to maintain ten percent insurance coverage and defendant would be responsible for ninety percent coverage of the value of the building in the event of a total loss. The effective date of the policy was June 2, 1976.

Pursuant to defendant's standard operating procedure with respect to insuring property valued over $100,000, defendant retained Commercial Services, Inc., to perform an inspection of the building. An inspection was performed and a report was completed showing the condition of the building, its dimensions, the number of floors, and estimated replacement cost of the structure based on a square foot replacement formula used by Commercial Services. Inspector Thomas Warren of Commercial Services estimated the replacement cost value of the building at $514,600 on the basis that the building would cost $30.90 per square foot to replace. The report also stated that the building's dimensions were 40 feet by 150 feet and 2½ stories tall. In fact, the building was 40 feet by 180 feet and had 3½ floors. Plaintiffs testified that they had not seen the report until after the fire. Defendant's employee, S. St. Cyr, reviewed the report and did not catch the errors, despite the fact that defendant did have a square footage figure of 33,588 from the Aetna appraisal in its records. Defendant disclaimed any knowledge of any other appraisal or inspection of the property at the time it issued plaintiffs' policy.

Approximately three or four months after the policy was purchased, Klein was notified by Dzintra Kingsley, an underwriter for defendant, that the building was underinsured based on their inspection. Klein advised plaintiffs that the replacement cost coverage should be $514,000, rather

than the original $450,000. At the June, 1977, installment date, coverage was increased to $540,000, to reflect both the increase in coverage required by defendant and an inflationary adjustment. Thereafter, subsequent adjustment in coverage was steadily increased to a final figure of $585,000.

After the fire and pursuant to the policy, defendant paid plaintiffs $524,682. The balance of approximately $61,000 was to be paid upon the rebuilding of the structure. After plaintiffs consulted architect Calvin Smith and discovered that it would cost $1.2 million to rebuild, plaintiffs did not rebuild. Plaintiffs' expert, Edward Deyo, stated that his estimate for the 1976 replacement cost value for the building was $1,212,004. For 1979, the estimate was increased to $1,328,629.

The jury returned a verdict of $739,784 in favor of plaintiffs. A judgment was entered on the verdict on March 3, 1986.[2] Thereafter, defendant moved for a JNOV, new trial or remittitur. Defendant's motions were denied. The instant appeal followed.

Defendant first alleges that the trial court erred by denying its motions for a directed verdict and JNOV. Defendant claims it owed no duty to plaintiffs to inspect and appraise the building. As to this contention, plaintiffs' cause of action did not allege a duty to inspect or appraise. Instead, plaintiffs' claim was based on a negligent appraisal. Plaintiffs alleged that once defendant undertook to appraise the building for purposes of informing plaintiffs of the required insurance coverage, defendant assumed a duty to use reasonable care in establishing the replacement cost value of the building.

---

[2] The amount of the judgment was reduced by $10,000 in light of plaintiffs' prior settlement of their claim with the Phoenix Agency.

In reviewing a trial court's denial of a motion for a directed verdict, this Court must view the evidence in the light most favorable to the non-moving party and determine whether a prima facie case was established. If there were material issues of fact upon which reasonable minds could differ, they were properly admitted to the jury. *Ritchie v Mich Consolidated Gas Co*, 163 Mich App 358, 367; 413 NW2d 796 (1987). When faced with a motion for JNOV, the court must view the evidence in the light most favorable to the nonmoving party and decide if the facts presented preclude judgment for the nonmoving party as a matter of law. If the evidence is such that reasonable persons could differ, the question is one for the jury and JNOV is improper. *Id.*, pp 367-368. A JNOV may be granted only where there is insufficient evidence, as a matter of law, to make an issue for the jury. *Willoughby v Lehrbass*, 150 Mich App 319, 344; 388 NW2d 688 (1986).

The trial judge did not err in denying defendant's motions. Plaintiffs' claim was premised on the fact that defendant owed them a duty to use reasonable care in appraising the building once defendant undertook the task of appraising the building for replacement cost coverage insurance.

At the outset, we note that the law does not impose a duty on insurers to inspect the premises of their insureds, although such an obligation may be undertaken. *Smith v Allendale Mutual Ins Co*, 410 Mich 685, 705; 303 NW2d 702 (1981), reh den 411 Mich 1154 (1981). Plaintiffs do not dispute this proposition. They contend, rather, that defendant, by inspecting the premises and performing the appraisal, incurred a duty to them to exercise reasonable care in appraising under common-law tort principles expressed in § 323 of the Restatement Torts, 2d:

§ 323. Negligent Performance of Undertaking to Render Services

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Plaintiffs' claim was essentially a negligence action. A prima facie case of negligence requires proof of four elements: (1) a duty owed to plaintiff by defendant; (2) breach of the duty; (3) causation; and (4) damages. *Moning v Alfono,* 400 Mich 425, 437; 254 NW2d 759 (1977), reh den 401 Mich 951 (1977). The primary element which is in issue here, that of "duty," has been defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct towards another. *Locklear v Stinson,* 161 Mich App 713, 716; 411 NW2d 834 (1987). Whether the law will impose such an obligation depends upon the relationship between the actor and the injured person. *Moning, supra,* pp 438-439.

It is for the court to determine, as a matter of law, what characteristics must be present for a relationship to give rise to a duty. Thereafter, the jury determines whether the evidence establishes the elements of that relationship. *Smith, supra,* p 714.

The dispute in the instant case concerns whether defendant's inspection and appraisal constituted an "undertaking" either for compensation or gratuitously to provide services to plaintiffs in

which the undertaking increased the risk of harm to plaintiffs or plaintiffs, in reliance on the undertaking, suffered harm.

The only case instructive on this issue is *Smith, supra.* Although *Smith* was construing § 324A of the Restatement Torts, 2d, the principles discussed therein are applicable to our case.[3] *Smith* involved the issue whether a fire insurer who inspected certain premises for the insured was liable to the insured's employees who sustained injury allegedly due to fire hazards that were not detected and brought to the insured's attention. After examining § 324A, the Court concluded:

> An insurer's inspection of an insured's premises for fire hazards does not in itself demonstrate an undertaking to render fire inspection and prevention services to the insured. Absent evidence that the insurer agreed or intended to provide services for the benefit of the insured, there is no basis for a conclusion that such inspections are conducted other than to serve the insurer's interests in underwriting, rating and loss prevention and hence there is no undertaking. An insurer who does not

---

[3] Section 324A provides:

324A. Liability to Third Person for Negligent Performance of Undertaking

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect [sic; perform] his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or third person upon the undertaking.

The only difference between § 324A and § 323 is that § 324A applies to injuries sustained by a third party rather than the party to whom the services were rendered.

> undertake to inspect for the insured's benefit owes
> no duty to the insured or the insured's employees
> to inspect with reasonable care; such an insurer is,
> however, subject to liability if it engages in affir-
> mative conduct creating or enlarging a fire hazard.
> [410 Mich 705-706.]

The *Smith* Court found no duty owed to the employees because merely inspecting the premises does not in itself represent that the insurer has done more than seek to reduce claims or determine whether it is willing to underwrite or remain on the risk. *Id.,* p 718.

In *Neal v Bergland,* 646 F2d 1178 (CA 6, 1981), aff'd sub nom *Block v Neal,* 460 US 289; 103 S Ct 1089; 75 L Ed 2d 67 (1983), the Sixth Circuit applied § 323 to a suit alleging negligent inspection and supervision of the construction of plaintiff's home by the Farmer's Home Administration (FmHA). The court held that plaintiff's complaint should not have been dismissed since she stated a claim against the FmHA for voluntarily undertaking to inspect and supervise plaintiff's construction of her home, but did so negligently. *Id.,* pp 1181-1184.

In our case, we concur with the trial court's denial of defendant's motions for a directed verdict and JNOV. The evidence indicated that defendant was aware through plaintiffs' agent, Klein, that plaintiffs sought full replacement cost coverage insurance. As a result, defendant retained Commercial Services to perform the appraisal. The amounts set on the policy were based on this appraisal. Although defendant claims that the sole purpose of the appraisal was for underwriting purposes, we conclude that at each dispositive motion, factual issues were raised on whether plaintiffs relied on defendant to establish the replacement cost value and whether the appraisal

was done to benefit the plaintiffs. Moreover, defendant's Michigan branch manager, Larry Wuetrich, testified that the coinsurance clause in the policy was designed as a penalty to ensure that an insured does not underinsure the property. Defendant, as part of its standard operating procedure, always conducted inspections. On these facts, we cannot conclude that the trial court erred in finding that defendant owed a duty to plaintiffs to exercise reasonable care in determining the replacement cost coverage under the policy issued to plaintiffs.

Next, defendant contends that it was error for the trial court to allow defendant's third-party complaint against Commercial Services to be admitted into evidence. We agree. However, reversal is not warranted because the admission of the third-party complaint constituted harmless error.

A decision whether to admit certain evidence rests within the sound discretion of the trial court, and that decision will not be set aside absent an abuse of discretion. *Guider v Smith,* 157 Mich App 92, 103-104; 403 NW2d 505 (1987). When reviewing a trial court's decision to allow the jury to be presented with certain evidence, this Court will not assess the weight and value of the evidence, but will only determine whether the evidence was of such a nature that it could be properly considered by the jury. *Id.,* p 104. In *Slocum v Ford Motor Co,* 111 Mich App 127, 134; 314 NW2d 546 (1981), lv den 414 NW2d 886 (1982), this Court stated that a plaintiff may not introduce allegations in a third-party complaint as evidence of negligence in the primary action. The rationale for such a rule is that a party should not be placed in a perilous situation of either foregoing one claim or having one claim used against another as an admission. *Id.* See also *Lenzo v Maren Engineering*

*Corp,* 132 Mich App 362; 347 NW2d 32 (1984), lv
den 419 Mich 937 (1984).

In our case, the trial court erred in allowing
introduction of certain allegations contained in the
third-party complaint. However, the error was
harmless because evidence of the Commercial Ser-
vices reports and the inaccuracies contained
therein were introduced through other witnesses.
Thus, affirming the verdict would not be inconsis-
tent with substantial justice. MCR 2.613(A).

Next, defendant contends that the trial court
incorrectly instructed the jury on the proper mea-
sure of damages. Defendant claims that the proper
measure of damages was the difference between
the amount of insurance benefits plaintiffs re-
ceived and the amount they would have received
had the building been appraised at its full value.
There was no objection to the instructions on the
basis defendant claims on appeal. Thus, pursuant
to MCR 2.516(C), defendant has not preserved the
issue.

In any event, our reading of the instructions as
a whole, *Willoughby, supra,* p 336, convinces us
that no error took place. The instructions regard-
ing damages were as follows:

If you decide that Plaintiffs are entitled to dam-
ages, it is your duty to determine the amount of
money which reasonably, fairly, and adequately
compensates them for each of the elements of
damage which you decide has resulted from the
negligence of the Defendant, taking into account
the nature and extent of the injury. You should
include each of the following elements of damage
which you decide has been sustained by Plaintiffs
to the present time.

A. The difference between the replacement cost
of Plaintiffs' office building as of February 12th,
1979, the date of the fire, and $524,682, the

amount of money paid by Defendant under the insurance policy.

B. The building operation losses sustained by Plaintiffs as a result of their inability to replace the office building to a condition and appearance similar to that which existed on February 12th, 1979.

In a tort action, the tortfeasor is liable for all injuries resulting directly from his wrongful act, whether foreseeable or not, provided that the damages are the legal and natural consequences of the wrongful act and are such that might have been reasonably anticipated in accordance with common experience in the usual course of events. *Sutter v Biggs,* 377 Mich 80, 86; 139 NW2d 684 (1966). In accordance with the foregoing principle, the damage instructions were proper.

Defendant's reference to *Strzelecki v Blaser's Lakeside Industries of Rice Lake, Inc,* 133 Mich App 191; 348 NW2d 311 (1984), and *Baranowski v Strating,* 72 Mich App 548; 250 NW2d 744 (1976), does not change our conclusion. In those cases, this Court held that the measure of damages to realty in a negligence action, where the damage cannot be repaired, is the difference between the market value of the property before and after the injury. 72 Mich App 562. In both cases, the damages claimed were damages caused to the property by each of the defendants' negligence. In *Strzelecki, supra,* p 193, plaintiffs' home was destroyed by fire caused by the alleged negligence of the manufacturer and retailer of an allegedly defective wood stove. Similarly, in *Baranowski, supra,* plaintiffs' home was damaged due to settlement of the foundation caused by the alleged negligence of the housebuilder in failing to conduct soil boring tests.

In our case, there was no allegation that any negligence by defendant caused the complete de-

struction of the building. Plaintiffs' claim was based on negligent inspecting and appraising of the building for insurance coverage. Plaintiffs' damages were assessed between the undertaking as actually performed by defendant and the undertaking it should have conducted in the exercise of reasonable care. Thus, pursuant to *Sutter, supra,* the damage instructions were proper.

Finally, defendant alleges that the trial court should have allowed it to amend its answer to assert comparative negligence against plaintiffs. This issue is without merit since defendant never moved to amend its pleadings. In addition, this issue has not been preserved since it is raised for the first time on appeal. *Dow Chemical Co v Curtis,* 158 Mich App 347, 352; 404 NW2d 737 (1987).

Affirmed.