HILLMAN ET AL., APPELLEES, *v.*
MCCAUGHTREY ET AL., APPELLANTS

September 15, 1989.)

*Michael I. Walling,* for appellees.
*Hoppe, Frey, Hewitt & Milligan, Thomas G. Carey, Jr.* and *Kevin Murphy,* for appellants.

FORD, J. The facts of this case are not in dispute. Appellant, D. Roger McCaughtrey, d.b.a. McCaughtrey Service, is the owner-operator of a gasoline service station/convenience store at which appellee, Carol Hillman (appellee) was employed as a cashier. Appellant stored several trucks and a family owned recreational vehicle in a garage located adjacent to the convience store.

On March 23, 1986, appellant started the engine of his recreational vehicle, hoping to charge the battery in anticipation of an upcoming family vacation. Appellant left the business premises about midafternoon, on March 23, to return home. Unfortunately, he neglected to turn off the engine to the recreational vehicle before departing. Appellee, who was working that particular Sunday, inhaled the carbon monoxide fumes and had to be hospitalized for the resultant injuries. Appellee has continued to suffer physiological injuries as the result of her exposure to the fumes.

Appellee asked for, and received, workers' compensation damages for her injuries. She also filed a civil suit against appellants, alleging negligent, wanton, reckless and intentional conduct. (Appellee only proceeded with the negligence claim.) Appellants moved for summary judgment, on the basis that the workers' compensation remedy received by appellee was her exclusive remedy. The trial court overruled this motion. The case went to a jury trial, where appellants raised this argument again, in a motion for directed verdict. The motion was similarly denied. On March 3, 1988, appellee and her husband were awarded $35,000 in damages. Appellants timely filed this appeal and have presented the following assignment of error:

"The trial court erred in denying

the defendants' motion for a directed verdict."

In this assignment, appellants contend that the trial court erred by not granting their motion for a directed verdict. Rather than address this argument as framed by appellants, appellees have submitted three arguments of their own, all of which present reasons that this court should allow appellees to prevail. Although appellees' brief addresses issues central to appellants' appeal, appellees should be mindful of App. R. 16(B), which requires appellees to respond to appellants' assignments of error, rather than propound their own.

Appellants argue that the trial court should have directed a verdict for them under R.C. 4123.74, which provides that workers' compensation damages provide the sole remedy in ordinary workplace negligence suits. *Van Fossen* v. *Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100, 522 N.E. 2d 489. The "test of the right to participate in the * * * Fund *is not whether there was any fault or neglect on the part of the employer or his employees,* but whether a 'causal connection' existed between an employee's injury and his employment either through the activities, the conditions or the environment of the employment." *Bralley* v. *Daugherty* (1980), 61 Ohio St. 2d 302, 303, 15 O.O. 3d 359, 360, 401 N.E. 2d 448, 449-450, quoted in *Waller* v. *Mayfield* (1988), 37 Ohio St. 3d 118, 122, 524 N.E. 2d 458, 462. An employee is held to be in the course of his employment when he does such activities that are usually associated or incidental to the work of the employer. *Lemming* v. *Univ. of Cincinnati* (1987), 41 Ohio App. 3d 194, 534 N.E. 2d 1226; *Taylor* v. *Indus. Comm.* (1920), 13 Ohio App. 262, 270, 13 Ohio C.C. (N.S.) 390, 396.

Appellee has set forth several arguments which purport to distinguish this case from these conventional workers' compensation scenarios. The first of these contentions states that an employer may have independent obligations arising out of his conduct which are separate from those covered by the workers' compensation act. This argument is often referred to as the "dual-capacity doctrine."

Under the dual capacity doctrine, " 'an employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort' " if he or she occupies, in addition to his or her status as an employer, a second capacity that would confer independent obligations upon him or her. *McCormick* v. *Caterpillar Tractor Co.* (1981), 85 Ill. 2d 352, 357, 423 N.E. 2d 876, 878; *Bingham* v. *Lagoon Corp.* (Utah 1985), 707 P. 2d 678. In a recent Ohio Supreme Court decision, the court held that:

" '* * * The decisive dual-capacity test is not concerned with how separate or different the second function of the employer is from the first, but whether the second function generates obligations unrelated to those flowing from that of employer. This means that the employer must step outside the boundaries of the employer-employee relationship, creating separate and distinct duties to the employee; the fact of injury must be incidental to the employment relationship.' " *Schump* v. *Firestone Tire & Rubber Co.* (1989), 44 Ohio St. 3d 148, 152, 541 N.E. 2d 1040, citing *Weber* v. *Armco, Inc.* (Okla. 1983), 663 P. 2d 1221, 1226-1227.

The first Ohio case to recognize the dual-capacity doctrine was *Guy* v. *Arthur H. Thomas Co.* (1978), 55 Ohio St. 2d 183, 9 O.O. 3d 138, 378 N.E. 2d 488. In *Guy,* the employee, who was employed by a hospital, was injured while in the scope of her employment. The employee's injuries required

medical care, which was provided at the employer hospital. While hospitalized, the employee received negligent medical treatment which exacerbated the initial injury. The court, drawing upon analogous findings in *Duprey* v. *Shane* (1952), 39 Cal. 2d 781, 249 P. 2d 8, stated that the employer had undertaken separate obligations towards its employee when it acted as her treatment facility.

The Ohio Supreme Court has construed the dual-capacity doctrine on several occasions since *Guy,* most frequently in the products liability context. In *Schump, supra,* the court greatly narrowed the scope of dual-capacity cases by holding in the syllabus that:

"Where an employer manufactures a product for public sale and for its own use, and an employee is injured while using the product within the scope of his employment, the employee may not maintain a products liability action against his employer under the dual-capacity doctrine. (*Bakonyi* v. *Ralston Purina Co.* [1985], 17 Ohio St. 3d 154, 17 OBR 356, 478 N.E. 2d 241, approved and followed.)"

In so holding, the court expressly rejected *Mercer* v. *Uniroyal, Inc.* (1976), 49 Ohio App. 2d 279, 3 O.O. 3d 333, 361 N.E. 2d 492, upon which appellee places so much emphasis.

The case *sub judice* concerns the obligations of appellants, not only as the employer of appellee, but also as the owner of the property in question. Appellee contends that the duty of appellants to maintain a safe premises for all invitees is separate and distinct from their obligations to appellee as an employer. A survey of the case law explicating the purported dual-capacity of the employer/landowner indicates that appellee's hypothesis has no merit. "It is held with virtual unanimity that an employer cannot be sued as the owner or occupier of land, whether

the cause of action is based on common-law obligations of landowners or on statutes such as safe place statutes or structural work acts." 2A Larson, Workmen's Compensation (1982), Section 72.82 cited in *Sharp* v. *Gallagher* (1983), 95 Ill. 2d 322, 447 N.E. 2d 786. See, also, *Bingham, supra.*

The explanation given by Larson for the aforementioned rule is a pragmatic one. An employer will almost always own or occupy business premises, and if each obligation related to the employer's status as a landholder could give rise to a tort suit, in addition to workers' compensation remedies, "the concept of exclusiveness of remedy would be reduced to a shambles." Larson, *supra.*

Examination of employer/landowner cases in other jurisdictions reveals that the rule in *Sharp* is applied uniformly, even in situations where the relation between the employer's business activities and his land ownership are remote. In *Jansen* v. *Harmon* (Iowa 1969), 164 N.W. 2d 323, the employer was both the operator of a business and the owner of an apartment building. The two activities were not at all related. The employee was directed to travel to the employer's building to pick up supplies. While on the apartment premises, the employee was injured. The Iowa Supreme Court held that the employee, who admittedly was in the scope of his employment and had received workers' compensation damages, could not recover separate tort damages from the employer. An analogous conclusion was reached in *Williams* v. *Hartshorn* (1946), 296 N.Y. 49, 50-51, 69 N.E. 2d 557, 558, where the court held:

"Regardless of his status as owner of the premises where the injury occurred, an employer remains an employer in his relations with his employees as to all matters arising

from and connected with their employment. He may not be treated as a dual legal personality, 'a sort of Dr. Jekyl and Mr. Hyde.' "

Ohio has used similar reasoning, in *Freese* v. *Consolidated Rail Corp.* (1983), 4 Ohio St. 3d 5, 4 OBR 5, 445 N.E. 2d 1110, in determining that a motorcycle police officer could not recover separate damages in tort for injuries which arose out of negligently maintained roadways.

In the case *sub judice,* appellants had a duty to provide a safe workplace for appellee that was part of their general obligations as an employer. When McCaughtrey negligently introduced carbon monoxide fumes into the workplace, he violated his obligation and was liable for workers' compensation damages. However, appellants cannot be found to have undertaken a separate and distinct legal persona ouside the scope of the employment relationship and, consequently, appellee's contention has no merit.

Appellee also premises her claim of dual-capacity upon the theory that, as a sole proprietor, McCaughtrey may be considered as both an employer and a co-employee. (R.C. 4123.01[A][2][b] allows the owner of a sole proprietorship to elect to be covered under the workers' compensation system as an employee.) Appellee argues that McCaughtrey, in his capacity as an employee, was engaged in a non-business related activity which resulted in appellee's injuries. Appellee argues that since appellant would be barred from workers' compensation, as a result of his frolic, he should also be estopped from using the workers' compensation laws as a shield of immunity when he was engaged in purely personal activities.

Appellee's argument, although creative, is without merit. Even if this court were to assume that R.C. 4123.01(A)(2)(b) could be interpreted in the manner suggested by appellee, there would still be no proof that appellant was acting as an "employee" at the time of the accident. Within the boundaries of legality and safety, a sole proprietor may do what he or she likes while on the business premises. To hold that appellant would be an employer while repairing customers' automobiles, but an employee while he charges his own car battery would be to foster a schizophrenic distinction nowhere supported by the law.

"All risks causing injury to a claimant can be brought within three categories: risks distinctly associated with the employment, risks personal to the claimant, and 'neutral' risks — i.e., risks having no particular employment or personal character. Harms from the first are universally compensable. Those from the second are universally noncompensable. It is within the third category that most controversy in modern compensation law occurs. The view that the injury should be deemed to arise out of employment if the conditions of employment put claimant in a position to be injured by the neutral risk is gaining increased acceptance." 1 Larson, The Law of Workmen's Compensation (1985) 3-12, Section 7.00, cited in *Waller* v. *Mayfield* (1988), 37 Ohio St. 3d 118, at 122, 524 N.E. 2d 458, at 462.

Examination of the facts in this case indicate that appellee's conduct clearly put her in the position to be injured, and that the injury arose out of her employment. It is uncontroverted that appellee was on appellant's premises as an employee, and there is no evidence that appellee would have been on the premises *but for* the employment. Clearly, a causal connection existed between appellee's employment and her presence at the worksite. Moreover, although appellant was working on his own vehicle, he was

pursuing his labor in a place designated for auto storage and repair. Exposure to the fumes of the automobiles would have been contemplated by persons employed by appellant. The fact that the vehicle in question belonged to the appellant does not alter the law in this case. Appellee's dual-capacity arguments are unpersuasive.

Appellee's final argument is that the case law in Ohio does not preclude a common-law action for torts which arise outside the workers' compensation system. *Blankenship* v. *Cincinnati Milicron Chemicals* (1982), 69 Ohio St. 2d 608, 23 O.O. 3d 504, 433 N.E. 2d 572; *Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 3d 90, 15 OBR 246, 472 N.E. 2d 1046. Appellee's argument disregards the fact that these cases concern intentional torts, which were found to be outside the negligence system. (Appellee also neglects to mention that the Ohio legislature greatly restricted the scope of what could be considered intentionally tortious conduct. See, *e.g., Van Fossen, supra.*) As this case concerns only an action in negligence, *Jones et al.* do not apply. Appellee's sole means of recovery is through the workers' compensation system.

The judgment of the trial court is hereby reversed for the reasons set forth in this opinion and judgment should be entered in favor of the appellant.

*Judgment reversed.*

CHRISTLEY, P.J., and MAHONEY, J., concur.