DERIGIOTIS v J M FEIGHERY COMPANY

Docket No. 106650. Submitted February 13, 1990, at Detroit. Decided May 9, 1990. Leave to appeal applied for.

Dean Derigiotis brought a products liability action in the Wayne Circuit Court, Marvin R. Stempien, J., against J.M. Feighery Company, the manufacturer of a carpet-cutting machine on which plaintiff was injured, and New York Carpet World, the owner of the machine. Plaintiff alleged negligent maintenance of the machine by Carpet World and defective design by Feighery. Carpet World moved for summary disposition alleging that it was plaintiff's employer and was thus entitled to assert the exclusive remedy provision of the Workers' Disability Compensation Act to bar plaintiff's action. Plaintiff moved to strike the affirmative defense raised by Carpet World, alleging that he was an employee of New York Leader Carpet Industries, Inc., a wholly owned subsidiary of Carpet World. The trial court determined plaintiff to be an employee of Leader and that Leader was a separate legal entity from Carpet World. The court denied Carpet World's motion and granted plaintiff's motion. A jury thereafter awarded plaintiff $1,324,110 and a judgment was entered thereon. Carpet World appealed.

The Court of Appeals *held:*

1. The trial court erred in deciding as a matter of law the question regarding who was plaintiff's employer since the evidence on the question was not reasonably susceptible of but a single inference (i.e., that plaintiff was Leader's employee). Carpet World is entitled to a new trial in which the question of its status as plaintiff's employer is submitted to the jury.

2. The Department of Labor Construction Safety Standards are inapplicable to this action and the trial court abused its discretion in admitting them in evidence and instructing the jury regarding the violation of the standards. The evidence should not be admitted on retrial and the trial court should refrain from rendering the instruction in this context on retrial.

3. The trial court did not abuse its discretion in admitting

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 156-159, 163, 547.
See the Index to Annotations under Workers' Compensation.

into evidence certain OSHA regulations. If error occurred, it was harmless.

Vacated and remanded.

1. WORKERS' COMPENSATION — EMPLOYMENT — QUESTIONS OF LAW — QUESTIONS OF FACT.

Whether a company is a particular worker's "employer," as that term is used in the workers' compensation act, is a question of law for the court to decide if the evidence on the matter is reasonably susceptible of but a single inference; only where the evidence bearing on the company's status is disputed, or where conflicting inferences may reasonably be drawn from the known facts, is the issue one for the trier of fact to decide.

2. WORKERS' COMPENSATION — EMPLOYMENT — ECONOMIC REALITIES TEST.

Whether a company was an employer of a worker for purposes of the workers' compensation act's exclusive remedy provision depends upon the economic realities of their relationship; the relevant factors considered under the economic reality test are: (1) control of the worker's duties, (2) payment of wages, (3) right to hire, fire and discipline, and (4) performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal; the test looks to the totality of the circumstances surrounding the performed work and all the factors are viewed as a whole and no single factor is controlling (MCL 418.131; MSA 17.237[131]).

*Chambers, Steiner, Mazur, Ornstein & Amlin, P.C.* (by *Angela J. Nicita* and *Michael S. Mazur*), for plaintiff.

*Sullivan, Ward, Bone, Tyler, Fiott & Asher, P.C.* (by *David M. Tyler* and *Ronald S. Lederman*), for defendant.

Before: HOLBROOK, JR., P.J., and HOOD and R. B. BURNS,* JJ.

PER CURIAM. Defendant New York Carpet World appeals as of right from the December 7, 1987, Wayne Circuit Court judgment following a jury

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

verdict awarding plaintiff $1,324,110 in this products liability case.

On December 22, 1983, plaintiff was injured as he was guiding a roll of carpet through a carpet-cutting machine. The carpet became caught between the machine's roller and guide and plaintiff attempted to release it with his hand. At this point, the machine activated and the cutting blade severed plaintiff's left thumb.

Plaintiff filed suit against defendant Carpet World, owner of the machine, for negligent maintenance and J.M. Feighery Company, manufacturer of the machine, for defective design. The jury found Feighery and Carpet World liable, but allocated seventy-five percent of the verdict against Carpet World and twenty-five percent against Feighery.[1]

I

On appeal, Carpet World first argues that the trial court erred in denying its motion for summary disposition and granting plaintiff's motion to strike the affirmative defense raised by Carpet World relating to the exclusive remedy of the Workers' Disability Compensation Act on the basis of a finding that Carpet World was not plaintiff's employer and thus was not entitled to assert the exclusive remedy provision of the Workers' Disability Compensation Act, MCL 418.131; MSA 17.237(131), as a bar to plaintiff's action.

Carpet World is a Michigan corporation engaged in the retail sale of floor coverings in Michigan and other states. Carpet World is also parent corporation to several wholly owned Michigan sub-

---

[1] Feighery initially appealed the verdict in Docket No. 106681. However, Feighery subsequently entered into a settlement with plaintiff and the appeal was dismissed. Carpet World is the only defendant a party to the present appeal.

sidiaries, one of which is New York Leader Carpet Industries, Inc. Leader was established in 1978 to conduct business in the commercial carpeting industry as opposed to the retail-residential industry. Leader operated its business by submitting bids on commercial projects. If the bid was accepted, Leader would place an order with Carpet World for the desired amount of carpet. Installation of the carpet was done by contractors procured by Carpet World. After completion of a project, Carpet World would bill Leader for the cost of materials and labor plus an agreed ten percent markup.

Plaintiff was hired by Carpet World in 1977. In March, 1982, plaintiff assumed an assistant supervisor position with Leader at a warehouse owned by Carpet World. Leader leased office space at the warehouse which was the location of plaintiff's accident. Plaintiff contends that he was employed by Leader. Carpet World, on the other hand, maintains that plaintiff was its employee.

In ruling on Carpet World's motion for summary disposition, the trial court first found that Leader was a separate legal entity from Carpet World. The court then applied the "economic reality" test and concluded:

> Based upon all of the evidence that's in the record, looking at the totality of the evidence as it applies to these four factors [of the economic reality test], the Court finds that it is more convincing that the employer is the Leader Company. Not only did the Leader Company pay Worker's Compensation, and not only has that been determined for the purposes of Worker's Compensation that is the employer, and not only is it a separate and distinct company from New York Carpet World, but also the employee looked to the Leader Company as his employer, and that is who had the right to hire and fire him.

In *Kenyon v Second Precinct Lounge,* 177 Mich App 492, 497; 442 NW2d 696 (1989), a panel of this Court enunciated the standard for deciding motions for summary disposition on the issue whether a company is the employer of a worker under the WDCA:

> Whether a company is a particular worker's "employer," as that term is used in the workers' compensation act, is a question of law for the courts to decide if the evidence on the matter is reasonably susceptible of but a single inference. *Nichol v Billot,* 406 Mich 284, 302-303; 279 NW2d 761 (1979) (quoting *Flick v Crouch,* 434 P2d 256 [Okla, 1967]). Only where the evidence bearing on the company's status is disputed, or where conflicting inferences may reasonably be drawn from the known facts, is the issue one for the trier of fact to decide. *Id.*

The appropriate test for determining whether defendant or Leader was plaintiff's employer is the economic reality test. *Wells v Firestone Tire & Rubber Co,* 421 Mich 641, 647; 364 NW2d 670 (1984). The economic reality test looks to the totality of the circumstances surrounding performed work. The relevant factors considered under the test have been summarized as: (1) control of a worker's duties, (2) payment of wages, (3) right to hire, fire and discipline, and (4) performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal. *Askew v Macomber,* 398 Mich 212, 217-218; 247 NW2d 288 (1976); *Andriacchi v Cleveland Cliffs Iron Co,* 174 Mich App 600, 605; 436 NW2d 707 (1989), lv den 433 Mich 879 (1989); *Parkkonen v Cleveland Cliffs Iron Co,* 153 Mich App 204, 209; 395 NW2d 289 (1986), lv den 428 Mich 859 (1987); *Lambard v Saga Food Service, Inc,* 127 Mich App

262, 270; 338 NW2d 207 (1983), lv den 419 Mich 958 (1984). Under this test, all of the factors are viewed as a whole and no single factor is controlling. *Farrell v Dearborn Mfg Co,* 416 Mich 267, 276; 330 NW2d 397 (1982).

In *Wells, supra,* our Supreme Court specifically dealt with the issue involved in the present case: whether the defendant parent corporation was the plaintiff's employer for purposes of the WDCA, where the plaintiff worked for the defendant's wholly owned subsidiary. The Court first found that the Court of Appeals correctly applied the economic reality test to the case to conclude that the plaintiff was an employee of the defendant parent corporation and thus could not maintain a products liability suit against it. *Id.,* p 650.

However, the Court further commented that this result amounted to a "reverse-piercing" of the defendant's corporate veil and opined that the fiction of distinct corporations will be ignored if it is invoked to subvert justice or its existence would cause a result contrary to some other clearly overriding public policy. *Id.* The *Wells* Court stated that disregard of the separate corporate entities was warranted in that case because of the important public policies underlying the WDCA and the Court's belief that a contrary determination would be inequitable under the facts. *Id.,* p 651. It should be reiterated that the *Wells* Court only reached its decision *after* proper application of the economic reality test. Thus, a "reverse-piercing" of a corporate veil resulting in a corporation's invoking the protection of the WDCA's exclusive remedy provision should not occur if the economic realities do not call for such a result. See *Parkkonen, supra,* pp 209-210.

Since the *Wells* decision, several cases from this Court have followed its rationale. See *Verhaar v*

*Consumers Power Co,* 179 Mich App 506, 508-510; 446 NW2d 299 (1989); *Andriacchi, supra,* p 608; *Parkkonen, supra,* pp 209-210. The only published case which has not adhered to *Wells* is *Wodogaza v H & R Terminals, Inc,* 161 Mich App 746; 411 NW2d 848 (1987).

In the instant case, we do not believe that the evidence on the issue whether Carpet World or Leader was plaintiff's employer was reasonably susceptible of a single inference (i.e., that plaintiff was Leader's employee). Therefore, the trial court erred in deciding the question as a matter of law. *Kenyon, supra.* We will briefly highlight, through application of the economic reality test, those facts which clearly demonstrate the conflicting nature of the evidence.

First, with respect to control of plaintiff's duties, plaintiff was given the position of assistant supervisor to aid a Carpet World warehouse manager who believed that plaintiff was an employee of Carpet World and that he was plaintiff's supervisor. However, the evidence also revealed that Leader's principals or officers desired plaintiff's additional supervision to assist in the processing of carpet for Leader. Under these facts, it is extremely difficult to ascertain which entity plaintiff actually worked for at the warehouse, let alone who controlled plaintiff's duties.

Next, plaintiff's wages were paid with checks from Leader which maintained separate accounts from Carpet World. A Leader principal stated at his deposition that plaintiff's salary came from Leader's profits. However, a Carpet World vice president maintained that plaintiff's salary was eventually charged back to Carpet World because he believed that plaintiff performed work for that entity and it was responsible for plaintiff's wages.

With regard to the right to hire, fire and disci-

pline plaintiff, Carpet World's warehouse manager believed that he had authority to discipline plaintiff although he was never directly informed that he could hire, fire or was in charge of plaintiff. Alternatively, a Leader principal maintained that he had the authority to discipline plaintiff.

Finally, in determining whether plaintiff's duties were an integral part of Carpet World's or Leader's business, we again note that plaintiff assumed his position because Leader desired additional supervision. Therefore, plaintiff's duties could be viewed as important facets of Leader's business toward the accomplishment of the timely and effective completion of commercial carpeting projects. However, plaintiff also performed work on Carpet World orders if requested to do so by its warehouse manager. In addition, the completion of Leader's projects was extremely important to Carpet World since it created Leader to become involved in the commercial carpeting industry. Under these circumstances it can be argued that plaintiff's duties were also an integral part of Carpet World's business.

We also note that Carpet World was self-insured while Leader's employees were insured by a commercial carrier. Leader paid plaintiff's workers' compensation benefits and filed separate tax returns. However, many of Leader's principals or officers were also officers and shareholders of Carpet World.

All of the above cited facts lead us to believe that the evidence was too conflicting to emphatically conclude that either Carpet World or Leader was plaintiff's employer. Therefore, we find that different inferences could reasonably be drawn from the facts. *Kenyon, supra,* p 497. The trial court erred in granting plaintiff's motion to strike the affirmative defense relating to the exclusive

remedy of the WDCA and Carpet World is entitled to a new trial in which the question of its status as plaintiff's employer is submitted to the jury.

II

While we have already concluded that defendant is entitled to a new trial, we will briefly address the remaining issues raised.

III

Defendant contends that the trial court abused its discretion in admitting into evidence two exhibits. The first exhibit at issue encompassed the Department of Labor Construction Safety Standards. Plaintiff asserted that defendant violated these regulations with regard to the carpet-cutting machine and was thus negligent. Plaintiff's expert safety consultant testified about the standards. Defense counsel declined to voir dire the witness and failed to object to admission of the evidence. Consequently, we would generally find that defendant waived review of this issue. MRE 103(a)(1). However, we believe that the regulations were inapplicable to the instant case, since they apply to employers or employees engaged in *construction* operations, and the trial court abused its discretion in admitting them. *Schanz v New Hampshire Ins Co,* 165 Mich App 395, 405; 418 NW2d 478 (1988). Thus, we instruct the trial court that the regulations should not be admitted on retrial.

The second exhibit consisted of OSHA regulations dealing with textile machinery equipment and other facilities in plants engaged in the manufacture and processing of textiles. While there appear to be arguments supporting either party's position,

our review of the record indicates that the trial court's decision on this matter was not an abuse of discretion. *Schanz, supra.* In any event, we feel that if any error occurred, it was harmless since references to the exhibit were limited and any prejudicial effect on the jury was unlikely.

## IV

Defendant next asserts that the trial court erred in giving SJI2d 12.05 regarding violation of the Department of Labor Construction Safety Standards. We previously concluded that the regulations were inapplicable and thus the trial court abused its discretion in admitting them. Therefore, we also feel that giving SJI2d 12.05 in conjunction with this evidence was erroneous and direct the trial court to refrain from rendering the instruction in this context on retrial.

## V

Defendant's final argument is that the trial court abused its discretion in failing to grant defendant a new trial or remittitur based upon an excessive jury award. Since we have granted defendant a new trial, we decline to undertake any review of the award.

## VI

In light of the foregoing conclusions, we vacate the jury's verdict in favor of plaintiff and remand the case for a new trial consistent with this opinion. We do not retain jurisdiction.

Vacated and remanded.