**SEATON–SSK ENGINEERING, INC.,
and CMI–International, Inc., et al.,
Appellants–Defendants Below,**

v.

**Russell FORBES, Appellee–
Plaintiff Below.**

No. 20A03–9308–CV–254.

Court of Appeals of Indiana,
Third District.

Sept. 8, 1994.

Robert J. Eleveld, Richard R. Symons, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, MI, Bryan B. Davenport, Buschmann, Carr & Shanks, P.C., Indianapolis, for appellants.

Kevin L. Likes, Auburn, for Russell Forbes.

Donald C. Mark, Jr., Meagher & Greer, Minneapolis, MN, for Parker–Hannifin Corp.

STATON, Judge.

CMI–International, Inc. ("CMI") is the parent company of wholly-owned subsidiaries CMI–Permanent Mold ("Permanent Mold") and Seaton–SSK Engineering, Inc. ("Seaton"). CMI and Seaton were denied summary judgment in an action brought by Russell Forbes ("Forbes") seeking recovery for injuries received in the course of his employment at Permanent Mold.

The trial court certified its order pursuant to Ind.Appellate Rule 4(B)(6). A single issue is presented for this court's review: whether the exclusive remedy provision of IND. CODE 22–3–2–6 applies to CMI and Seaton because Forbes received worker's compensation benefits from Permanent Mold.

We conclude that the applicability of I.C. 22–3–2–6 to CMI and Seaton is dependent upon the resolution of a disputed issue of material fact. Therefore, the denial of summary judgment is affirmed.

On November 21, 1988, Forbes was operating a tilt molding machine manufactured by Seaton when Forbes' right arm was amputated. He subsequently collected worker's compensation benefits through Permanent Mold.[1]

On November 16, 1990, Forbes brought suit against S.B.C. Industries, Parker Hannifin Corporation, Atlas Cylinder Corporation, CMI and Seaton. CMI and Seaton moved for summary judgment, claiming that Forbes' personal injury claim was precluded by the exclusivity provision of the Indiana Worker's Compensation Act. Summary judgment was denied.

---

1. All CMI subsidiaries are self-insured for worker's compensation. Creative Risk Management Corporation administers the benefits for all CMI subsidiaries.

I.C. 22–3–2–6, the exclusivity provision of the Indiana Worker's Compensation Act, provides:

> "The rights and remedies granted to an employee subject to IC 22–3–2 through IC 22–3–6 on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, the employee's personal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury or death, except for remedies available under IC 5–2–6.1."

■ The exclusive remedy provision does not bar the right of an employee to assert actions against third parties. *Stump v. Commercial Union* (1992), Ind., 601 N.E.2d 327, 330. Thus, whether Forbes may maintain a separate cause of action against CMI and Seaton is dependent upon whether he is simultaneously the employee of Permanent Mold, its parent corporation and its sister subsidiary.

Although CMI, Permanent Mold and Seaton are formally organized as separate corporations, CMI and Seaton contend that the entire "family" of CMI companies comprise an "employing unit." Treatment as an "employing unit" is appropriate because all CMI subsidiaries exist for the satisfaction of a common profit objective and all subsidiaries directly or indirectly bear the cost of providing worker's compensation benefits. CMI and Seaton raise two public policy arguments: "double payment" by one "employing unit" is inequitable and worker's compensation statutes should be liberally construed when asserted as a defense because they are liberally construed to allow benefit collection. *Isom v. Limitorque Corp.* (1992), 193 Mich. App. 518, 484 N.W.2d 716, *app. denied.*

To support the premise that a parent corporation and all its subsidiaries may be considered a single "employing unit," CMI and Seaton rely upon *Cook v. Peter Kiewit Sons Co.* (1963), 15 Utah 2d 20, 386 P.2d 616. "Being so united for a common purpose for mutual profit, these companies became partners in the venture ... and whatever one company and its employees did in furthering the project would inure to the benefit of the other." *Id.* 386 P.2d at 618. *See also Wells v. Firestone Tire and Rubber Co.* (1984), 421 Mich. 641, 364 N.W.2d 670 (the direct employer was a wholly-owned subsidiary; the parent was entitled to the protection of the exclusivity provision of the worker's compensation scheme).

CMI further argues that, just as a parent corporation reaps the benefits of a profitable venture by a subsidiary, the parent directly or indirectly pays each subsidiary's cost of worker's compensation coverage. *See Aragon v. Clover Club Foods Co.* (1993), Utah, 857 P.2d 250; *Isom, supra.*

Presuming their entitlement to treatment as an employing unit, CMI and Seaton argue that Forbes is actually trying to predicate his claim upon a "dual capacity doctrine," an exception to the exclusive remedy of the worker's compensation scheme recognized in several other jurisdictions. Under the doctrine, an employee is allowed to maintain a separate cause of action against his employer where the employer occupies, in addition to his capacity as an employer, a second capacity that confers upon him obligations independent of those imposed upon him as an employer. *See Kimzey v. Interpace Corp., Inc.* (1985), 694 P.2d 907, 910, 10 Kan.App.2d 165, *review denied; Taynton v. Dersham* (1986), 516 A.2d 1241, 1245, 358 Pa.Super. 178, *app. denied; Salswedel v. Enerpharm, Ltd.* (1988), 764 P.2d 499, 501, 107 N.M. 728; *Pavlek v. Forbes Steel and Wire Corp.* (1986), 517 A.2d 564, 565, 358 Pa.Super. 316; *Schmid v. U.S.* (1987), 826 F.2d 227, 229; *Kosowan v. MDC Industries, Inc.* (1983), 465 A.2d 1069, 1071, 319 Pa.Super. 91 *Kohr v. Raybestos–Manhattan, Inc.* (1981), 522 F.Supp. 1070, 1075; *Shields v. San Diego County* (1984), 202 Cal.Rptr. 30, 34, 155 Cal. App.3d 103; *Darville v. Texaco, Inc.* (1982), 674 F.2d 443, 446; *DeFigueiredo v. U.S. Metals Refining Co.* (1988), 563 A.2d 76, 235 N.J.Super. 458; *Handley v. Wyandotte Chemicals Corp.* (1982), 325 N.W.2d 447, 450, 118 Mich.App. 423; *Simpkins v. Delco Moraine Div.* (1981), 444 N.E.2d 1064, 1065, 3 Ohio App.3d 275; *Hendy v. Losse* (1991), 1 Cal.Rptr.2d 543, 547, 819 P.2d 1, 5, 54 Cal.3d 723, *reh. denied; Hillman v. McCaughtrey* (1989), 564 N.E.2d 1123, 1125, 56 Ohio App.3d 100.

The justification for the imposition of liability under the dual capacity doctrine notwithstanding the receipt of worker's compensation benefits is that an employer may breach a duty which does not arise out of the employer-employee relationship. *White v. E.I. du Pont de Nemours and Co.* (1981), 523 F.Supp. 302, 303. In other words, an employer may cause an injury in a role other than the role of employer. *Kelly v. Johns–Manville Corp.* (1984), 590 F.Supp. 1089, 1102. An example is where the defendant employer is engaged in the manufacture and sale of an allegedly defective product to the public. *Horney v. Guy F. Atkinson Co.* (1983), 190 Cal.Rptr. 18, 21, 140 Cal.App.3d 923. "If an employer acts in a second capacity such as the manufacturer of injury-causing equipment, then worker's compensation may not be employee's exclusive remedy against employer." *Watters Associates v. Superior Court* (1991), 1 Dist., 278 Cal.Rptr. 417, 419, 227 Cal.App.3d 1341, *review denied.*

Here, Seaton manufactured the tip molding machine which was the instrumentality involved in the amputation of Forbes' arm. If the machine was designed or altered by the manufacturer so as to render it unsafe, there arguably occurred a breach of duty not directly related to the employer-employee relationship between Forbes and Permanent Mold.

However, in 1977, this court rejected a "dual-capacity" claim where an employee was injured while cleaning a pressure cooker manufactured by his employer; the employee collected worker's compensation benefits yet attempted to pursue a products liability claim. This court stated that the "dual-capacity" doctrine was inconsistent with the statutory abrogation of "all other rights and remedies" as to the employer when worker's compensation benefits were obtained. *Needham v. Fred's Frozen Foods, Inc.* (1977), 171 Ind.App. 671, 672, 359 N.E.2d 544, 545.

The rejection of the "dual capacity" doctrine has been reaffirmed by this court. *Ind. State Highway Dept. v. Robertson* (1985), Ind.App., 482 N.E.2d 495, 499. Moreover, in *Rodgers v. Hembd* (1988), Ind.App., 518 N.E.2d 1120, *trans. denied,* a fellow employee (an architect who allegedly designed an

unsafe work environment) was afforded protection under the Indiana Worker's Compensation Act, because he was "under the control" of the joint employer and could have rendered the joint employer vicariously liable for a design defect.

■ However, Forbes need not rely upon the "dual capacity" doctrine to support his claim if CMI, Seaton and Permanent Mold are separate corporate entities.

Forbes contends that CMI and Seaton are entitled to a "reverse-piercing" of the corporate veil only upon a showing of the necessity to prevent fraud or injustice. "To prevent fraud or injustice, the fiction of corporate entity may be disregarded where one corporation is so organized and controlled and its affairs are so conducted that it is a mere instrumentality or conduit of another corporation.... A careful review of the entire relationship between the corporate entities and their officers and directors is required to determine if justification exists for piercing the corporate veil." *Detrick v. Midwest Pipe & Steel, Inc.* (1992), Ind.App., 598 N.E.2d 1074, 1080.

Forbes urges the use of an "economic reality" test in determining whether CMI and Seaton are, along with Permanent Mold, his "employer." He relies upon *Derigiotis v. J.M. Feighery Co.* (1990), 185 Mich.App. 90, 460 N.W.2d 235 and *Wodogaza v. H. & R. Terminals, Inc.* (1987), 161 Mich.App. 746, 411 N.W.2d 848, *app. denied.* The "economic reality" test involves a consideration of the "totality of the circumstances surrounding the work performed." *Derigiotis, supra,* 460 N.W.2d at 235. Relevant factors include: control of the worker's duties, payment of wages or benefits, the right to hire, fire and discipline, and performance of duties as an integral part of the employer's business. *Id.*

This test is consistent with the public policy embodied in our worker's compensation scheme. Inasmuch as employers are insulated from full responsibility for employment-related injury, it is equitable to confer such insulation only where an employment relationship has actually existed between the parties. *See Perry v. Stitzer Buick GMC, Inc., et al.,* (1994), Ind., 637 N.E.2d 1282

(Dickson, J., concurring) ("the worker's compensation law insulates employers from full responsibility for personal injuries to their employees").

Forbes has designated to the trial court material issues of fact as to the "level of integration" of the corporate structure here at issue.[2] In his appellate argument, he recognizes that the parent and subsidiary are more closely integrated than the sister subsidiaries. He characterizes the sister subsidiaries as merely "horizontally" integrated, having a "tenuous" connection.

The record discloses the relevant factual circumstances concerning the operation of CMI and its subsidiaries: Seaton and Permanent Mold have 2 of 3 Directors in common; Ray Witt owns 85% of the shares of CMI (which wholly owns Seaton and Permanent Mold); CMI has about 20 subsidiaries, located in various states; Witt visits manufacturing subsidiaries only (to conduct operational meetings); in the entire corporation, Witt approves capital expenditures over $25,000; a consolidated tax return is filed; day-to-day operations are handled by individual plant supervisors; each subsidiary has a payroll account, funded by CMI; Seaton makes equipment for foundries and Permanent Mold makes aluminum castings for the automotive industry; some subsidiaries are unionized and some are not; subsidiaries are "self-insured" for worker's compensation; a joint profit-sharing plan exists.

In sum, the basic details of the operations are not disputed (e.g. whether separate tax returns or bank accounts exist). However, the factfinder must determine whether the employees of one subsidiary are subject to the degree of control by the parent or a sister subsidiary characteristic of an "employment" relationship.

The factual determination concerning the level of integration between CMI and its subsidiaries is a necessary prerequisite to the application of I.C. 22–3–2–6. Thereafter, any necessary construction of the worker's compensation statute terms must be made in a light favorable to the employee. Recently, in *Stump, supra,* our supreme court examined the public policy underlying the Indiana Worker's Compensation Act when considering the issue of whether the exclusivity provision of I.C. 22–3–2–6 should offer immunity to a worker's compensation insurance carrier:

> "We find no adequate justification to absolve worker's compensation insurance carriers and other such third parties of their responsibilities in the event of additional injuries or harm proximately caused by their actionable conduct.

> This view is consistent with the ideals expressed in Art. 1, § 12, of the Constitution of Indiana:

>> All courts shall be open; and every person, for injury done to him and his person, property or reputation, shall have remedy by due course of law. Justice shall be administered freely and without purchase; completely, and without denial; speedily and without delay.

> By limiting the application of the exclusive remedy provision to employee claims against the employer and declining to extend its protection to the worker's compensation insurance carrier, we are likewise construing the statute in a manner consistent with the purposes of the Act. The long-standing rule of this jurisdiction is that the Worker's Compensation Act should be liberally construed to effectuate the humane purposes of the Act, and that *doubts in the application of terms are to be resolved in favor of the employee. Talas v. Correct Piping Co., Inc.* (1982), Ind., 435 N.E.2d 22, 28."

*Stump, supra,* at 331–2 (emphasis added).

Summary judgment was properly denied. The factfinder must determine whether the "totality of the circumstances surrounding the work performed" is such that CMI or

---

**2.** In his designation of material issues of fact, Forbes contended: "There exists a legitimate dispute regarding the degree of control and integration of business operations existing between CMI and Permanent Mold." and "There exists a legitimate dispute regarding the degree of control and integration of business operations existing between Seaton and Permanent Mold." Record, pp. 107–8.

Seaton exercises "control" over Permanent Mold employees.

HOFFMAN and BARTEAU, JJ., concur.