PARKKONEN v CLEVELAND CLIFFS IRON COMPANY

THIBEAULT v CLEVELAND CLIFFS IRON COMPANY

HILTUNEN v CLEVELAND CLIFFS IRON COMPANY

JOHNSON v CLEVELAND CLIFFS IRON COMPANY

Docket Nos. 84494, 84495, 84496, 84497. Submitted May 7, 1986, at Marquette. Decided July 8, 1986. Leave to appeal denied, 428 Mich —.

John W. Parkkonen died while working at the Empire Mine. David Thibeault injured his back and shoulder while working at the Empire Mine. Larry C. Hiltunen suffered an injury which required the amputation of a leg while working at the Marquette Mine. Frederick A. Johnson fractured a foot and suffered spinal injuries while working at the Mather B. Mine. Nancy E. Parkkonen, decedent John W. Parkkonen's widow, and the injured workers named above each filed suit seeking to hold Cleveland Cliffs Iron Company (hereinafter defendant), and others liable in tort for their respective injuries. Defendant thereafter petitioned the Bureau of Workers' Disability Compensation for a hearing and a declaration that it was the employer of plaintiff Parkkonen's deceased husband and the other plaintiffs, thus entitling it to the exclusive remedy provision of the Workers' Disability Compensation Act. A hearing officer determined that defendant was in fact the employer with respect to the plaintiffs. The Workers' Compensation Appeal Board affirmed the hearing officer's determination. Plaintiffs appealed to the Court of Appeals, which denied leave to appeal. Subsequently, the Supreme Court, in lieu of granting plaintiffs' application for leave to appeal, remanded the cases back to the Court of Appeals as if on leave granted. 422 Mich 873 (1985). The Court of Appeals consolidated the cases. *Held:*

1. The existence of an employer-employee relationship for

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 50, 51, 358.

Third-party tortfeasor's right to have damages recovered by employee reduced by amount of employee's workers' compensation benefits. 43 ALR4th 849.

Modern status of effect of State Workmen's Compensation Act on right of third-person tortfeasor to contribution or indemnity from employer of injured or killed workman. 100 ALR3d 350.

purposes of the Workers' Disability Compensation Act is determined by examining the economic realities of the situation. Factors relevant when analyzing the nature of such relationship are (1) control of the worker's duties, (2) payment of wages, (3) hiring, firing, and responsibility for the maintenance of discipline, and (4) performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal.

2. In these cases, the hearing officer and the appeal board correctly applied the economic reality test in ruling that defendant, with whom the owners of the mines involved in these cases had a contract for management services and who had a minority proprietary interest in the mines, as well as a portion of the mineral rights in the ore mined, was the employer with respect to plaintiffs and is therefore immune from a suit in tort for their injuries under the exclusive remedy provision of the Workers' Disability Compensation Act.

Affirmed.

1. WORKERS' COMPENSATION — EMPLOYMENT — ECONOMIC REALITITES TEST.

Whether a business was an employer of a worker claiming workers' compensation benefits depends upon the ecomonic realities of their relationship; among the relevant factors which demonstrate an employment relationship are: (1) control of the workers' duties, (2) the payment of wages, (3) the right to hire and fire, and the right to discipline, and (4) the performance of the worker's duties as an integral part of the business toward the accomplishment of a common goal.

2. WORKERS' COMPENSATION — EMPLOYMENT — ECONOMIC REALITIES TEST — EXCLUSIVE REMEDY.

A parent corporation, which, under the economic realities of the situation, is the true employer of an injured worker, should not be denied the protection of the exclusive remedy provision of the Workers' Disability Compensation Act simply because the worker was employed in name by a subsidiary of such corporation; conversely, however, a corporation should not be given the protection of the exclusive remedy provision simply due to its shareholder status in the corporation which employed the worker if such a conclusion is not supported by the economic realities of the situation.

*Wisti & Jaaskelainen, P.C.* (by *Gordon J. Jaaskelainen*), for plaintiffs.

*Clancey, Hansen, Chilman, Graybill & Greenlee, P.C.* (by *Ronald E. Greenlee*), for defendant.

Before: T. M. BURNS, P.J., and J. H. GILLIS and M. J. KELLY, JJ.

PER CURIAM. These consolidated cases have been remanded to this Court by the Supreme Court for consideration as if on leave granted. *Parkkonen v Cleveland Cliffs Iron Co,* 422 Mich 873-874; 366 NW2d 10 (1985). Plaintiffs appealed from a May 13, 1983, order of the Workers' Compensation Appeal Board affirming the decision of the hearing officer that Cleveland Cliffs Iron Company (hereinafter defendant) was the employer of plaintiff Parkkonen's decedent and the remaining plaintiffs and thus immune from suit for the injuries sustained, pursuant to the exclusive remedy provision.

The cases arose out of the four separate injuries suffered by the plaintiffs while engaged in their employment as miners. Plaintiff Parkkonen's husband died on May 19, 1979, while working at the Empire Mine. Plaintiff Thibeault was also working at the Empire Mine when he suffered back and shoulder injuries on November 29, 1978. Plaintiff Johnson fractured a foot and incurred spinal injuries on January 30, 1979, while working at the Mather B. Mine, which was owned in part by the Negaunee Mining Company. Plaintiff Hiltunen suffered an injury which required amputation of one of his legs on January 22, 1978, while working at the Marquette Mine.

The Marquette Iron Mining Company, Negaunee Mining Company, and Empire Iron Mining Company were incorporated entities at the time the four injuries occurred. These corporations had entered into a contract with defendant by which

defendant provided management services for the mines. Each of the three corporations were dissolved in the late seventies and took partnership forms after dissolution. New management agreements were then entered into with the defendant. Prior to dissolution, defendant was a minority shareholder in each of the three corporations and became a partner in each after the change in operating form.

Pursuant to the management contract between defendant and the various mining companies, defendant hired employees for all of the mines through its office in Ishpeming. Defendant placed advertisements in newspapers when employees were needed, distributed and reviewed applications, and selected employees from the pool of applicants. The mine managers and superintendents at the three mines were directly employed and paid by defendant. All miners at the three mines were paid with checks bearing the name of defendant. Defendant sent payroll requests to its central office in Cleveland, Ohio, which transferred funds to defendant's account at the Miners First National Bank & Trust in Ishpeming. Checks were drawn on defendant's account, and the payroll cost was transferred back to the three mines.

During periods of unemployment, senior miners at one mine were permitted to "bump" miners with less seniority at any of the other mines. Defendant managed a Supplemental Unemployment Benefit Fund, to which all of the mines contributed on a per-man-hour basis. In case of unemployment at one of the mines, the unemployed miners at that mine could completely deplete the unemployment fund.

Defendant directly disciplined the employees of the mines, and distributed safety and benefit booklets. Defendant also negotiated labor contracts for

all three mines, but most of the labor provisions were set by industry-wide bargaining.

Defendant was responsible for the payment of workers' compensation benefits, sickness and accident claims, and pension benefits directly to the employees. However, the costs of such payments were charged back to the respective mines at which the employees worked. A stock option plan was made available to salaried employees, pursuant to which stock in the defendant company was allocated.

In addition to having an ownership interest in each of the mining companies, defendant also owns a portion of the mineral rights in the ore mined. Royalties are charged to the mining companies in accordance with this ownership interest. Defendant was also paid a fee for rendering management services.

After lawsuits were filed by each of the plaintiffs seeking to hold defendant liable in tort for the respective injuries, defendant filed petitions for hearing with the Bureau of Workers' Disability Compensation, seeking a declaration that it was the employer of plaintiff Parkkonen's decedent and the other plaintiffs, thus entitling it to the protection of the exclusive remedy provision of the Workers' Disability Compensation Act. MCL 418.131; MSA 17.237(131). The plaintiffs contended that they were employed by the individual mines and that defendant was merely an outside agent with whom the mines had contracted for management services. A hearing held April 14, 1981, resulted in a determination that defendant was in fact the plaintiffs' employer for purposes of the act. The hearing officer applied the economic reality test in arriving at his decision, as well as relying upon defendant's proprietary interest in the ownership of the mines and its ownership of

the mineral rights. The plaintiffs appealed to the WCAB, which affirmed in an opinion dated May 16, 1983.

Since the Supreme Court rendered its decision in *Tata v Muskovitz,* 354 Mich 695; 94 NW2d 71 (1959), whether there exists an employer-employee relationship for purposes of the Workers' Disability Compensation Act[1] has been determined by examining the economic realities of the situation. *White v Central Transport, Inc,* 150 Mich App 128; 388 NW2d 274 (1986); *Nichol v Billot,* 406 Mich 284, 293-294; 279 NW2d 761 (1979). The factors recognized as relevant in analyzing the nature of the relationship are (1) control of the worker's duties, (2) payment of wages, (3) hiring, firing, and responsibility for the maintenance of discipline, and (4) performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal. *Farrell v Dearborn Mfg Co,* 416 Mich 267, 276; 330 NW2d 397 (1982); *Askew v Macomber,* 398 Mich 212, 217-218; 247 NW2d 288 (1976).

In finding that the defendant should be considered the employer under the Workers' Disability Compensation Act, the hearing officer relied not only upon the economic reality test, but also on the fact that defendant had an ownership interest in the mines. We agree with the plaintiffs that the defendant's status as a minority shareholder in the mining corporations was an inappropriate factor to consider. While the Supreme Court recently affirmed a decision of this Court which had the effect of "reverse-piercing" a defendant's corporate veil, it was not an examination of the corporate structure which led to that result, but rather a proper application of the economic reality test.

[1] MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.*

*Wells v Firestone Tire & Rubber Co*, 421 Mich 641, 650; 364 NW2d 670 (1984). Thus, the *Wells* Court held that if a parent corporation is, under the economic realities of the situation, the true employer of an injured worker, that corporation should not be denied the protection of the exclusive remedy provision simply because the worker was employed in name by a subsidiary of the defendant corporation. *Wells, supra.* Conversely, however, a corporation should not be given the protection of the exclusive remedy provision simply due to its shareholder status in the corporation which employed the worker if the economic realities do not call for such a result. See *Elliott v Smith*, 47 Mich App 236; 209 NW2d 425 (1973). Thus, we conclude that the hearing officer should have concentrated exclusively on the economic reality test in resolving this question.

Reviewing the evidence presented at the hearing held to consider defendant's petition, we find that the economic reality test was correctly applied by the hearing officer and the appeal board. That evidence, as outlined above, revealed that the plaintiffs' duties were controlled by the defendant. For example, testimony revealed that defendant disciplined the employees. Further, the managers and superintendents at the mines, who were in charge of controlling the day-to-day activities of the workers, were employed and paid by the defendant. Defendant also distributed safety booklets and thereby instructed the mine workers in safe work procedures.

Regarding the second factor, wages were drawn on defendant's account at the Miners First National Bank & Trust after being processed through defendant's head office in Cleveland. However, the cost of wage payments was transferred to the

mining companies, and therefore the ultimate responsibility for payment of wages fell to the separate mining companies.

The right to hire, fire, and discipline plaintiffs was exercised by defendant. Defendant solicited applications for employment, reviewed the applications, and made hiring and firing decisions.

The final factor under the economic reality test is whether performance of plaintiffs' duties was an integral part of defendant's business toward accomplishment of a common goal. The plaintiffs were engaged in mining iron ore, and testimony at the hearing indicated that defendant's principal business is mining. The mining companies were also involved in the same business, and were dependent upon defendant due to the latter's ownership of a portion of the mineral rights to the iron ore mined. Defendant was in turn dependent upon the companies and the workers to extract the ore. It is therefore clear that all parties were working toward the accomplishment of a common goal, one which could be realized only by a combined business effort.

We conclude that, other than the ultimate responsibility for the payment of wages, the circumstances of the arrangement presented here indicate that defendant was the employer of plaintiff Parkkonen's decedent and the remaining plaintiffs for purposes of the Workers' Disability Compensation Act. The decision of the WCAB is therefore affirmed.

Affirmed.