BAZINAU v MACKINAC ISLAND CARRIAGE TOURS

Docket No. 202787. Submitted October 7, 1998, at Marquette. Decided
February 5, 1999, at 9:10 A.M.

Walter A. Bazinau, as personal representative of the estate of William
Bazinau, deceased, brought an action in the Mackinac Circuit Court
against Mackinac Island Carriage Tours and Bombardier Corpora-
tion, seeking damages resulting from the drowning of the deceased.
The drowning occurred when a tracked vehicle manufactured by
Bombardier broke through the ice while William was hauling horse
feed to Mackinac Island across the frozen Straits of Mackinac dur-
ing the course of his employment by Carriage Tours. The plaintiff
alleged that the action against Carriage Tours was not barred by
the exclusive remedy provision of the Worker's Disability Compen-
sation Act (WDCA) because the employer committed an intentional
tort. The plaintiff alleged that Bombardier was responsible for dam-
ages under a products liability/design defect theory. The court,
Nicholas J. Lambros, J., found evidence of an intentional tort and
denied the employer's motion for summary disposition. The court
granted summary disposition in favor of Bombardier, finding the
deceased's use of the vehicle to cross the frozen straits not foresee-
able. Carriage Tours appealed by leave granted and the plaintiff
cross appealed.

The Court of Appeals held:

1. The plaintiff's claim is barred by the exclusive remedy provi-
sion of the WDCA, MCL 418.131(1); MSA 17.237(131)(1). The plaintiff
failed to establish that the officers of Carriage Tours had actual
knowledge that an injury would occur or wilfully disregarded the
danger. The court erroneously found evidence of an intentional
tort. The order denying Carriage Tours' motion for summary dispo-
sition must be vacated and the matter must be remanded for entry
of a judgment in favor of Carriage Tours.

2. The plaintiff failed to establish a prima facie case of design
defect or that the decedent's use of the vehicle to cross the frozen

body of water was foreseeable. The order granting Bombardier's motion for summary disposition must be affirmed.

Affirmed in part, vacated in part, and remanded.

1. WORKER'S COMPENSATION — INTENTIONAL TORT EXCEPTION.

An employee's exclusive remedy for a personal injury or occupational disease is the recovery permitted under the Worker's Disability Compensation Act, except where an employer commits an intentional tort; an intentional tort exists only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury; an employer is deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and wilfully disregarded that knowledge (MCL 418.131[1]; MSA 17.237[131][1]).

2. WORKER'S COMPENSATION — INTENTIONAL TORT EXCEPTION — WORDS AND PHRASES — ACTUAL KNOWLEDGE — CERTAIN TO OCCUR.

An injured employee may establish the employer's "actual knowledge" that the employee's injury was certain to occur, for purposes of the intentional tort exception to the exclusive remedy provision of the Worker's Disability Compensation Act, by showing that a supervisory or managerial employee had actual knowledge that an injury would follow from what the employer deliberately did or did not do; when an injury is certain to occur, no doubt exists with regard to whether it will occur (MCL 418.131[1]; MSA 17.237[131][1]).

3. PRODUCTS LIABILITY — MANUFACTURER'S DUTY — INTENDED USE OF PRODUCT.

A manufacturer of a product has a duty to eliminate any unreasonable risk of foreseeable injury resulting from the use of the product; the intended use of a product can be taken into account in determining whether an alleged defect in the design of the product created an unreasonable risk of foreseeable injury.

4. PRODUCTS LIABILITY — DEFECTIVE DESIGN — SAFETY DEVICES.

A prima facie case that would overcome a defendant's motion for a directed verdict in a products liability action alleging defective design on the basis of the omission of a safety device requires a showing of the magnitude of the foreseeable risks, including the likelihood of occurrence of the type of accident precipitating the need for the safety device and the severity of injuries sustainable from such an accident, and a showing of alternative safety devices

and whether those devices would have been effective as a reasonable means of minimizing the foreseeable risk of danger.

*Green, Weisse, Rettig, Rademacher & Clark, P.C.*(by *Richard D. Clark*), for the plaintiff.

*Davidson, Breen & Doud, P.C.* (by *Craig A. Zanot*), for Mackinac Island Carriage Tours.

*Zamplas, Johnson, Sopt & Cavanagh, P.C.* (by *Dennis Zamplas* and *Julie Lyons Kosovec*), for Bombardier Corporation.

Before: SAAD, P.J., and HOOD and GRIBBS, JJ.

SAAD, P.J.

### NATURE OF THE CASE

In the course of his employment with Mackinac Island Carriage Tours (Carriage Tours), William Bazinau, plaintiff's decedent, hauled horse feed to Mackinac Island from St. Ignace by pulling cargo across the frozen Straits of Mackinac. Tragically, plaintiff's decedent drowned when the tracked vehicle he drove broke through the ice. Plaintiff, as personal representative of Bazinau's estate, seeks to hold decedent's employer, Carriage Tours, and the manufacturer of the tractor, Bombardier Corporation (Bombardier), liable for his death on respective theories of intentional tort and products liability/design defect.

Because Michigan's Worker's Disability Compensation Act (WDCA)[1] provides an employee's exclusive remedy for injuries resulting from workplace negligence, plaintiff cannot recover from Carriage Tours unless the alleged wrongful conduct was intentional.[2] Accordingly, Carriage Tours is entitled to summary disposition under MCR 2.116(C)(10) unless plaintiff demonstrates a question of fact on this issue: Did Carriage Tours intend to harm the decedent? Therefore, this suit—like many tort suits by employees against employers—raises the question of what constitutes an intentional tort under the exclusive remedy provision of the WDCA. Here, the trial court erroneously found evidence of an intentional tort and denied the employer's motion for summary disposition. We vacate that order and remand for entry of a judgment for Carriage Tours.

With respect to his products liability/design defect claim against Bombardier, plaintiff must show that the design of the tractor created an unreasonable risk of foreseeable injury. Plaintiff challenges the trial court's determination that the decedent's use of the vehicle to traverse a frozen body of water was not foreseeable. The trial court properly granted the manufacturer's motion for summary disposition. We affirm that order.

---

[1] MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.*

[2] MCL 418.131(1); MSA 17.237(131)(1).

FACTS AND PROCEEDINGS

The decedent was an employee of Carriage Tours, which provides horse-drawn transportation services on Mackinac Island. In February 1994, his job duties included hauling horse feed to the island from St. Ignace. The decedent hauled the feed by driving a Bombardier tracked vehicle, a model SW-48 FA tractor, across the frozen Straits of Mackinac. The winter of 1994 was exceptionally cold, and the temperature had been below freezing for fifty-nine consecutive days before the decedent's accident. The decedent and James and William Chambers, officers of Carriage Tours, measured the thickness of the ice across the path for five or six days before the accident and found that the ice was more than eighteen inches thick. The Chambers brothers did not know what thickness of ice was required to support a tractor, but they believed eighteen inches was sufficient. In the previous two years, the Chambers brothers did not haul cargo across the ice because they did not believe the ice conditions were safe. William Chambers described the 1994 ice conditions, however, as the best he had ever seen. Given the uncertainty inherent in such an activity, the Chambers brothers assigned another employee, George Wellington, to drive alongside the decedent and assist him in case of an accident. For one week before February 15, the decedent and Wellington hauled the hay without incident.

According to plaintiff, the decedent had asked the Chambers brothers to have the roof of the tractor removed, so that he would not be trapped if the tractor broke through the ice. The cab of the tractor had no egress other than the side doors. The decedent sometimes tied the doors open to facilitate escape,

but he did not do so on the day of the fatal accident. On February 15, while the decedent and Wellington were making the trip, Wellington was driving ahead of the decedent. Wellington looked back and realized that the tractor had gone through the ice. The decedent's body was never recovered, although rescue workers found the tractor. Apparently, the decedent had been able to escape the vehicle through a door, but he never made it to the surface. The plaintiff brought an action against both Carriage Tours and Bombardier.

### LAWSUIT AGAINST CARRIAGE TOURS

In order to proceed with the action against Carriage Tours, plaintiff was required to show that the lawsuit was not barred by the exclusive remedy provision of the WDCA, i.e., that the alleged tort was intentional. Plaintiff claimed that Carriage Tours' officers, William and James Chambers, knew that vehicles were likely to crash through the ice and that a worker driving an enclosed vehicle would not be able to escape in time. In support of this argument, plaintiff offered evidence that the Chambers brothers were aware of previous accidents (none fatal) in which tracked vehicles, snowmobiles, and pickup trucks got stuck in the ice or crashed through. This included a 1991 incident in which James Chambers was driving an open-topped tracked vehicle that went through the ice. Although the tractor sank in three minutes, James escaped by standing up on the seat as the machine went down and floating until William threw him a rope.

Plaintiff presented testimony that the decedent and William and James Chambers discussed taking the top off the tractor and that this modification could

have been easily made. He also presented testimony that the Chambers brothers knew that the thickness of the ice varied greatly and was not predictable. Plaintiff argued that this evidence established that Carriage Tours had actual knowledge that an injury was *certain* to occur and wilfully disregarded this knowledge, constituting an intentional tort under the WDCA. The trial court agreed and denied Carriage Tour's motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact).

### LAWSUIT AGAINST BOMBARDIER

Plaintiff also claimed that Bombardier, as manufacturer of the tractor, was liable under a design defect theory. Plaintiff alleged that it was foreseeable that someone would use the vehicle to travel across ice and that it was therefore unreasonably dangerous to design the vehicle without an escape hatch in the roof. Bombardier argued that it was not liable because Carriage Tours' use of the vehicle to travel across ice was not foreseeable. In support of this argument, Bombardier adduced evidence that the vehicle was designed for clearing snow off sidewalks or other snow-clearing jobs and that it was never intended to be driven across frozen lakes. James Chambers averred that he had no particular reason for selecting the SW-48 FA other than that it happened to be available. Plaintiff argued, however, that use to travel across frozen lakes was foreseeable, even if not intended, because Bombardier warned purchasers in a safety guide not to cross a frozen body of water "unless absolutely sure the ice is thick enough to support vehicle weight."

The trial court granted Bombardier's motion for summary disposition pursuant to MCR 2.116(C)(10), finding that the design of the vehicle was not unreasonably dangerous because it was unforeseeable that it would be used to cross a frozen body of water. The trial court subsequently denied plaintiff's motion for reconsideration, rejecting plaintiff's argument that the trial court applied the wrong legal standard.

We granted Carriage Tour's motion to bring an interlocutory appeal. Plaintiff has cross appealed from the order of summary disposition for Bombardier.

LAW AND ARGUMENT

I

CARRIAGE TOURS

Carriage Tours argues that it was entitled to a judgment as a matter of law because plaintiff's claim was barred by the exclusive remedy provision of the WDCA. We agree.[3]

Early in the twentieth century, our Legislature implemented a no-fault compensation system as the exclusive remedy for workers injured on the job.[4] In exchange for the no-fault remedy, employees gave up their right to bring tort actions against their employers for certain occupational injuries. The question remained, however, whether the exclusive remedy

---

[3] We review a trial court's grant of summary disposition de novo. *Pinckney Community Schools v Continental Casualty Co*, 213 Mich App 521, 525; 540 NW2d 748 (1995). Under MCR 2.116(C)(10), "a trial court must examine all the documentary evidence in a light most favorable to the nonmoving party and determine as a matter of law whether there exists a genuine issue of material fact." *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 183; 551 NW2d 132 (1996).

[4] 1912 (1st Ex Sess) PA 10, part 1, § 4; 1915 CL 5426.

provision also barred actions for intentional torts. The panels of this Court issued conflicting opinions regarding this controversy. See *Genson v Bofors-Lakeway, Inc*, 122 Mich App 470; 332 NW2d 507 (1983) (actions for intentional torts not permitted), and *Burgess v Holloway Constr Co*, 123 Mich App 505; 332 NW2d 584 (1983) (intentional torts are outside exclusive remedy provision).

In 1987, our Legislature amended the WDCA to provide an intentional tort exception to the exclusive remedy provision. The amended statute, MCL 418.131(1); MSA 17.237(131)(1), provides:

> The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. *The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge.* The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law. [Emphasis added.]

The pivotal question in this genre of work-related tort cases is what the Legislature intended by the words *"actual knowledge that an injury was certain to occur."*

In *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 183; 551 NW2d 132 (1996), the Michigan Supreme Court interpreted the sentence in the exclusive remedy provision that reads "[a]n employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to

occur and willfully disregarded that knowledge." The Court stated initially that this sentence should be read

> as a legislative recognition of a limited class of cases in which liability is possible despite the absence of a classic intentional tort and as a means of inferring an employer's intent to injure from the surrounding circumstances in those cases. [*Id.*, 173.]

In construing the phrase "actual knowledge," the Court stated that

> *constructive, implied, or imputed knowledge is not enough. Nor is it sufficient to allege that the employer should have known, or had reason to believe, that injury was certain to occur.* . . . A plaintiff may establish a corporate employer's actual knowledge by showing that a supervisory or managerial employee had actual knowledge that an injury would follow from what the employer deliberately did or did not do. [*Id.*, 173-174 (emphasis added).]

The Court explained when a dangerous condition rises to the level of "certain to occur," stating that "[w]hen an injury is 'certain' to occur, *no doubt exists with regard to whether it will occur.*" *Id.*, 174 (emphasis added). The Court continued:

> Thus, *the laws of probability, which set forth the odds that something will occur, play no part in determining the certainty of injury.* Consequently, scientific proof that, for example, one out of ten persons will be injured if exposed to a particular risk, is insufficient to prove certainty. Along similar lines, just because something has happened before on occasion does not mean that it is certain to occur again. Likewise, just because something has never happened before is not proof that it is not certain to occur. [*Id.* (emphasis added).]

According to the *Travis* Court, the following conditions are indicative of "an injury certain to occur":

> When an employer subjects an employee to a continuously operative dangerous condition that it knows will cause an injury, yet refrains from informing the employee about the dangerous condition so that he is unable to take steps to keep from being injured, a factfinder may conclude that the employer had knowledge that an injury is certain to occur. [*Id.*, 178.]

The Court construed the term "willfully disregard[s]"

> to underscore that the employer's act or failure to act must be more than mere negligence, that is, a failure to act to protect a person who might foreseeably be injured from an appreciable risk of harm. An employer is deemed to have possessed the requisite state of mind when it disregards *actual knowledge that an injury is certain to occur.* [*Id.*, 179 (emphasis added).]

Applying these principles to the facts in *Travis*, where the plaintiff was injured when the press he was operating "double cycled," the Court noted that the supervisor had actual knowledge that the press had been malfunctioning for about a month. *Id.*, 181. However, the Court found that the supervisor did not have knowledge that an injury was certain to occur because the press double cycled only intermittently and did not constitute a "continually operating dangerous condition." *Id.*, 182. In addition, the plaintiff was unable to prove that the supervisor "willfully disregarded" his knowledge of the condition because he made adjustments that usually allowed the machine to run without double cycling for at least one or two days. *Id.*

In *Golec v Metal Exchange Corp*, a companion case to *Travis, supra*, 453 Mich 149, the plaintiff was severely burned while loading a furnace with scrap metal when aerosol cans exploded. The Court found that, accepting the plaintiff's facts as true, a genuine issue of material fact existed with respect to whether the defendant had actual knowledge of the condition that caused the plaintiff's injury. *Id.*, 185. Moreover, the Court found that there was conflicting evidence regarding the question whether the injury was "certain" to occur. The defendant presented evidence that the plaintiff was instructed regarding a method of loading wet scrap that would avoid an explosion. *Id.* The plaintiff testified, however, that he was loading the wet scrap in the way in which he was trained, but that the explosion occurred anyway. *Id.*, 186. The plaintiff's contention, according to the Court, was that "every load of scrap had the potential to explode because each load could have contained a closed aerosol can or water." *Id.* Accordingly, the Court concluded that a genuine issue of material fact was presented regarding whether the injury was certain to occur. *Id.* Finally, the Court found that the facts as alleged by the plaintiff created a genuine issue of material fact concerning the question of his employer's wilful disregard of knowledge that an injury was certain to occur, because the plaintiff presented evidence that, despite knowledge of an earlier explosion, the defendant failed to remedy the condition that caused it. *Id.*

We read *Travis* and *Golec* to say that for the present plaintiff to proceed with his claim of intentional tort, he must demonstrate that a question of fact exists on this precise issue: Did William and James

Chambers disregard actual knowledge that an accident was *certain to occur*? Here, viewing the evidence in a light most favorable to plaintiff, we cannot conclude that the Chambers brothers disregarded actual knowledge that an accident was *"certain"* to occur. This case is factually analogous to the *Travis* case discussed above. Like the employer in *Travis*, who knew that a double-cycling press presented a risk of injury, the Chambers brothers knew that traversing a frozen body of water was potentially hazardous. However, the Chambers brothers, like the employer in *Travis*, took precautions to guard against that risk. The Chambers brothers refrained from conducting the crossings in winters when ice conditions were deemed unsafe. They measured the ice in several different spots, apparently to take into account the variability of the thickness of the ice. They assigned an escort to help the decedent if trouble arose. It clearly follows that neither the Chambers brothers nor plaintiff's decedent knew that an accident was certain to occur. The logic of the circumstances and precautions taken by all concerned belies plaintiff's assertion. Though many people might refrain from taking the risk obvious to these conditions, here, all concerned seemed willing to first exercise precautions and then take a calculated risk.

This case is not factually analogous to *Golec*, *supra*. There, the employer knew that aerosol cans were being loaded into a furnace (even though not every load contained a can) and that aerosol cans inevitably will explode in heat. In contrast, here it was not inevitable that the tractor would break through the ice. The decedent made trips across the ice for a week without incident. James Chambers'

previous accident, in 1991, occurred when ice conditions were more dangerous than in 1994. Under the standards set forth in *Travis*, plaintiff has failed to establish that the Chambers brothers had actual knowledge that injury would occur. *Id.*, 173-174. Merely showing a likelihood of an accident is not sufficient. *Id.*, 174. The frozen straits did not present a "continuously operative dangerous condition," but rather a *potential* hazard. *Id.*, 178. Furthermore, just as we would not say that plaintiff's decedent "willfully disregarded" the danger, neither can we say that the Chambers brothers "willfully disregarded" the danger where they exercised the stated precautions.[5]

The trial court erroneously denied Carriage Tours' motion for summary disposition under MCR 2.116(C)(10). We vacate that order and remand for entry of a judgment for Carriage Tours.

II

BOMBARDIER

In a cross appeal, plaintiff contends that the trial court erroneously granted Bombardier's summary disposition motion with respect to plaintiff's claim of design defect. We disagree and affirm that order.

---

[5] Plaintiff contends, in both the intentional tort and products liability claims, that the decedent's life could have been saved if he had been able to escape through the top of the vehicle. We are not convinced that removing the top of the vehicle, or equipping the vehicle with a rooftop escape hatch, would have significantly lessened the danger of this operation. Even in an open vehicle, the decedent would have been subject to the hazards of the frozen straits. Furthermore, it is questionable whether the closed top was the proximate cause of the decedent's death. The decedent was not trapped in the vehicle; he apparently escaped through a door but was unable to return to the surface. Whether he would have survived if the top of the vehicle had been open is purely speculative.

Plaintiff contends that the tractor was of an unreasonably dangerous design because there was no means to escape through the top if the tractor crashed through ice and sank. Bombardier argued that it had no duty to provide a top escape hatch because it was not foreseeable that anyone would drive the tractor on a frozen lake. The trial court agreed with Bombardier and granted its motion for summary disposition.

On appeal, plaintiff argues that the trial court applied the wrong standard of law because it considered the *intended* rather than the *foreseeable* use. Here, however, this distinction is meaningless because plaintiff clearly failed to establish a prima facie case of design defect.

A manufacturer has a duty to "eliminate any unreasonable risk of foreseeable injury." *Prentis v Yale Mfg Co*, 421 Mich 670, 693; 365 NW2d 176 (1984). Plaintiff argues that the Bombardier tracked vehicle was unreasonably dangerous because there was no upper escape hatch. In *Reeves v Cincinnati, Inc*, 176 Mich App 181, 187-188; 439 NW2d 326 (1989), we summarized the burden of proof in a prima facie case of a design defect based on the omission of a safety device:

> [A] prima facie case of a design defect premised upon the omission of a safety device requires first a showing of the magnitude of *foreseeable risks*, including the likelihood of occurrence of the type of accident precipitating the need for the safety device and the severity of injuries sustainable from such an accident. It secondly requires a showing of alternative safety devices and whether those devices would have been effective as a reasonable means of minimizing the foreseeable risk of danger. This latter showing may entail an evaluation of the alternative design in terms of its

additional utility as a safety measure and its trade-offs
against the costs and effective use of the product. [Empha-
sis added.]

See also *Prentis, supra,* 687, n 24; *Owens v Allis-
Chalmers Corp,* 414 Mich 413, 418; 326 NW2d 372
(1982). The intended use of a product can be taken
into account in a determination whether an alleged
defect in the design of a product created an unreason-
able risk of foreseeable injury. *Prentis, supra,* 694.
The intended use of the Bombardier SW-48 FA is
clear from the manual that Bombardier Corporation
provided with the vehicle. The manual described the
SW-48 FA as "a special purpose vehicle designed for
clearing snow off sidewalks," and mentioned that it
"was designed primarily as a sidewalk snow-clearing
tractor."

Plaintiff argues that regardless of the intended use,
it was foreseeable that the tractor would be used on a
frozen lake. Plaintiff cites *Ghrist v Chrysler Corp,* 451
Mich 242; 547 NW2d 272 (1996),  and several other
cases in support of this argument. We are not con-
vinced. These cases merely reiterate the elements of a
design defect cause of action, including foreseeable
use. Although plaintiff emphasizes that a use might be
foreseeable even if it is not intended, plaintiff has
offered no evidence to establish that the decedent's
use of the tractor to cross a frozen body of water was
foreseeable. Although the manual stated that the vehi-
cle could be used for any other snow-clearing job,
given its special purpose, we cannot conclude that
Bombardier could have reasonably foreseen or antici-
pated that anyone would use the tractor to cross a
frozen lake. *Prentis, supra,* 694. Indeed, to the con-
trary, in its general guide to safe driving of off-road

tracked vehicles Bombardier cautioned: "never cross a frozen body of water unless absolutely sure the ice is thick enough to support vehicle weight." This does not suggest that it anticipated that the SW-48 FA would be used on ice, because the guide was distributed with all Bombardier's different models of tracked vehicles. Evidence that Bombardier designed other models of tracked vehicles with top escape hatches suggests that it was feasible to include such a safety device in the design. However, the evidence that the company omitted such a safety device in the SW-48 FA further reinforces the view that it was not anticipated or foreseeable that this model would be used to cross the frozen straits. A manufacturer's prudent warning to caution against inappropriate use of a vehicle should not and does not thereby render the inappropriate use foreseeable. To do so would require manufacturers to design safety devices for every conceivable misuse. This is not the law of Michigan. See *Owens, supra,* 432, quoting *E I DuPont de Nemours & Co v Baridon,* 73 F2d 26, 30 (CA 8, 1934) ("Manufacturers are not insurers that 'in every instance and under all circumstances no injury will result from the use' of their products.").

Accordingly, we vacate the order denying Carriage Tours' motion for summary disposition and remand for entry of a judgment for Carriage Tours. We affirm the order granting a judgment for Bombardier. We do not retain jurisdiction.