**Manuel LOPEZ, Guadalupe Lopez, Karen Lopez, and Eva Lopez, Plaintiffs,**

v.

**UNION CARBIDE CORPORATION, Defendant.**

No. Civ.A. 96–40464.

United States District Court, E.D. Michigan, Southern Division.

Feb. 23, 2000.

David Buckfire, Lawrence J. Buckfire, Buckfire & Buckfire, Southfield, MI, for plaintiffs.

Lisa A. Robinson, Lewis & Kappes, Indianapolis, IN, Robert A. Marsac, Lisa A. Robinson, Shaheen I. Imami, Wise & Marsac, Detroit, MI, for defendants.

***MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON GUADALUPE AND EVA LOPEZ'S CLAIMS ONLY AND DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT***

GADOLA, District Judge.

Before the Court are Defendant Union Carbide Corporation's Motion for Sum-

mary Judgment on Guadalupe and Eva Lopez's Claims Only and Defendant's Renewed Motion for Summary Judgment. For reasons stated below, this Court grants Defendant's Motion for Summary Judgment on Guadalupe and Eva Lopez's Claims Only, grants Defendant's Renewed Motion for Summary Judgment, and dismisses this civil action.

**Factual and Procedural Background**

At oral argument on the motions before the Court, the parties agreed to the following summary of the factual and procedural background.

Plaintiffs are Manuel Lopez, his wife Karen Lopez, Guadalupe Lopez, and his wife Eva Lopez. The only remaining Defendant in this civil action is Union Carbide Corporation, a New York corporation.

Plaintiffs Manual Lopez and Guadalupe Lopez worked for National Steel Corporation but were temporarily assigned to work at the Linde Division Plant in Ecorse, Michigan, owned and operated by Union Carbide pursuant to written agreements between National Steel and Union Carbide known as the "Oxygen Agreements." While working at the Union Carbide plant, Plaintiffs allegedly were exposed to hazardous and toxic chemicals, among them the chemical solvent 1, 1, 1 trichloroethane. The exposure and contact with such chemicals allegedly caused severe injuries to Plaintiffs Manual Lopez and Guadalupe Lopez.

Plaintiffs filed their Complaint in the State of Michigan Circuit Court for the County of Wayne. The Complaint initially named as Defendants Union Carbide, National Steel Corporation, Dow Chemical Corporation, and a John Doe later identified as Roger Vincent. Defendants National Steel and Dow Chemical had been dismissed by the time Defendant Union Carbide filed its Notice of Removal, and Judge Anna Diggs Taylor, to whom this case originally had been assigned, denied Plaintiffs' motion to amend Complaint to include Roger Vincent.

The only remaining claims for relief are Plaintiffs Manuel Lopez's and Guadalupe Lopez's claims for negligence and intentional tort (Count I) and Plaintiffs Karen Lopez's and Eva Lopez's claim for loss of consortium (Count IV).

This Court stayed this case in November, 1997 pending the conclusion of proceedings before the State of Michigan Bureau of Workers' Disability Compensation (the "Bureau") and any appeals from the Bureau's decision. Those state proceedings and appeals concluded, and in March, 1999 the stay was lifted.

Plaintiff Guadalupe Lopez had filed a claim with the Bureau alleging that "during the course of his employment [he] was exposed to dust, asbestos, vapors, chemicals and other deleterious substances causing chest, lung, heart, and kidney pathology causing and/or aggravating to the point of disability." On May 13, 1997, Magistrate John J. Hurbis of the Bureau found that Guadalupe Lopez "suffers from a disease which is in no way associated with his employment" and did not reach the question of by whom Guadalupe Lopez was employed. Magistrate Hurbis' opinion was based on extensive testimony by both lay and expert witnesses for all parties.

Plaintiff Guadalupe Lopez appealed the Bureau's opinion to the State of Michigan Workers' Compensation Appellate Commission (the "Commission"). The Commission dismissed the appeal because it was untimely. Plaintiff Guadalupe Lopez appealed that dismissal to the State of Michigan Court of Appeals. The Court of Appeals reversed the Commission's dismissal and remanded the case to the Commission to consider the substance of Plaintiff's appeal. In an opinion signed by Commissioners Marten N. Garn, Richard B. Leslie, and Jürgen Skoppek and entered on March 31, 1999, the Commission reviewed the record, found the requisite support for the magistrate's opinion, and affirmed that opinion "in its entirety." Plaintiff Guadalupe Lopez did not appeal the final opinion of the Commission.

Plaintiff Manuel Lopez had filed a similar claim with the Bureau, but settled with National Steel prior to a trial before the Bureau. (*See* Pls.' Resp. at 6.)

## Discussion

### 1. Standards

#### a. Summary judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Turnpike Commission*, 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, where a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.; Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated:

> [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transportation Service, Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 150 (6th Cir.1995).

### b. Collateral estoppel

■ A question that is put in issue and decided by a court of competent jurisdiction cannot be disputed in a subsequent action between the same parties, even if the subsequent suit alleges a different cause of action. *See Bricklayers and Allied Craftsmen Local 14 v. Russell Plastering Co.,* 755 F.Supp. 173, 176 (E.D.Mich. 1991) (Gadola, J.). "To determine the preclusive effect of a prior state court judgment, federal courts must apply the preclusion law of the state in which that prior judgment was rendered." *Metzler v. United States,* 832 F.Supp. 204, 207 (E.D.Mich.1993) (Gadola, J.).

■ According to the Michigan Supreme Court, "[f]or collateral estoppel to apply, a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment. In addition, the same parties must have had a full opportunity to litigate the issue, and there must be mutuality of estoppel." *Storey v. Meijer, Inc.,* 431 Mich. 368, 373 n. 3, 429 N.W.2d 169 (1988); *see Nummer v. Treasury Department,* 448 Mich. 534, 542, 533 N.W.2d 250 (1995). "The estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him." *Lichon v. American Universal Insurance Co.,* 435 Mich. 408, 427, 459 N.W.2d 288 (1990); *Howell v. Vito's Trucking and Excavating Co.,* 386 Mich. 37, 43, 191 N.W.2d 313 (1971).

■ Where a party "is seeking to preclude relitigation on the basis of an administrative decision, three additional requirements must be satisfied" for collateral estoppel to have effect: (1) "[t]he administrative determination must have been adjudicatory in nature," (2) the determination must provide a right to appeal, and (3) "the Legislature must have intended to make the decision final absent an appeal." *Nummer,* 448 Mich. at 542, 533 N.W.2d 250.

### 2. Analysis

### a. Defendant's Motion for Summary Judgment on Guadalupe and Eva Lopez's Claims Only

■ In the instant case, the doctrine of collateral estoppel precludes relitigating the facts found by the Bureau of Workers' Disability Compensation and affirmed by the Workers' Compensation Appellate Commission.

A question of fact essential to the judgment in the instant case was actually litigated and determined by a valid and final judgment of the Bureau and affirmed by the Commission. The two questions before the Bureau were (1) by whom Plaintiff Guadalupe Lopez was employed and (2) whether Plaintiff suffered from a work-related disease. The Bureau concluded that Guadalupe Lopez "suffers from a disease which is in no way associated with his employment" and, therefore, did not reach the question of Plaintiff's employer. Whether Plaintiff suffers from a work-related disease also is a question of fact essential to his claims against Defendant for negligence and intentional tort no matter who his employer might have been.

The same parties had a full opportunity to litigate the issue before the Bureau because Union Carbide was among the Defendants before the Bureau. Collateral estoppel is mutual here because Union Carbide would have been bound by the Bureau's decision had the Bureau determined that Plaintiff Guadalupe Lopez's condition was work-related and that Union Carbide was his employer.

In the instant case, the administrative determination was adjudicatory in nature. The Bureau rendered its opinion after a full trial where both Plaintiff and Defendant were represented by counsel and were given the opportunity to present evidence and witnesses. Over the course of five days of trial, Plaintiff Guadalupe Lopez presented three lay witnesses, one expert witness, and several exhibits; Union

Carbide presented four expert witnesses and several exhibits.

There is a right to appeal the administrative determination guaranteed by Article 6, Section 28 of the Constitution of the State of Michigan, which provides, in part:

*All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law.* This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. *Findings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law.*

Mich. Const., art. 6, § 28 (emphasis added). While findings of fact are "conclusive," conclusions of law in worker's compensation proceedings are appealable as demonstrated by Plaintiff's appeal to the Michigan Court of Appeals, an appeal that resulted in a remand to the Commission and later the Commission's final opinion.

The Michigan legislature intended to make the opinions of the Bureau and Commission final absent an appeal. The Michigan Worker's Disability Compensation Act provides that, with respect to the decision of the Workers' Compensation Appellate Commission, "[t]he decision reached by a majority of the assigned 3 members of a panel shall be the final decision of the commission." M.C.L. § 418.274(8).

If this Court were to deny Defendant's Motion for Summary Judgment on Guadalupe and Eva Lopez's Claims Only and were to either grant summary judgment on the basis that Defendant Union Carbide was not the employer—a question that the Bureau did not need to reach—or deny summary judgment and proceed to trial, it would, in effect, be acting as an appellate court for the state administrative agency, reviewing the substance of the case *de novo.* Plaintiff had an opportunity to appeal the final opinion of the Commission, but chose not to do so. This Court should not act as the state appellate court or permit Plaintiff to relitigate to an extent beyond what is permitted by Michigan law.

In both the instant civil action and in the matter before the Bureau, Plaintiff Guadalupe Lopez alleged that he was exposed to the solvent 1, 1, 1 trichloro*ethane;* the Bureau opinion mistakenly states that the solvent at issue was 1, 1, 1 trichloro*ethylene.* Plaintiffs argue that there can be no collateral estoppel where the chemicals are different, but the difference appears to be a scrivener's error and not a difference in substance of what was litigated.

Finally, if Plaintiff Guadalupe Lopez cannot maintain claims for negligence or intentional tort, then neither can Plaintiff Eva Lopez maintain her claim for loss of consortium because her claim is dependent upon his claim. *Long v. Chelsea Community Hospital,* 219 Mich.App. 578, 589, 557 N.W.2d 157 (1996) ("A derivative claim for loss of consortium stands or falls with the primary claims in the complaint."); *see Moss v. Pacquing,* 183 Mich.App. 574, 583, 455 N.W.2d 339 (1990). Because Plaintiff Guadalupe Lopez's claims fail, Plaintiff Eva Lopez's loss of consortium claim likewise must fail.

Therefore, this Court will grant Defendant's Motion for Summary Judgment on Guadalupe and Eva Lopez's Claims Only.

**b. Defendant's Renewed Motion for Summary Judgment**

In light of this Court's conclusion to grant Defendant's Motion for Summary Judgment on Guadalupe and Eva Lopez's Claims Only, this Court will exclude Guadalupe and Eva Lopez from the analysis of Defendant's Renewed Motion for Summary Judgment. Furthermore, since the ability of Plaintiff Karen Lopez to maintain

her loss of consortium claim depends on the ability of Plaintiff Manuel Lopez to maintain his negligence or intentional tort claims, *see Long*, 219 Mich.App. at 589, 557 N.W.2d 157, *Moss*, 183 Mich.App. at 583, 455 N.W.2d 339, this Court will focus first on Plaintiff Manuel Lopez's claims.

Defendant filed an earlier version of this "renewed" motion for summary judgment in May, 1996, in which Defendant moved for summary judgment on Plaintiffs' negligence claim only. Judge Anna Diggs Taylor denied that motion *without prejudice* in September, 1996 because discovery had not been completed. When Defendant filed this "renewed" motion, Defendant included an argument that this Court should grant summary judgment on Plaintiffs' intentional tort claim for relief as well as the negligence claim. Instead of "renewing" their response, Plaintiffs simply filed their original June, 1996 response as an attachment to a new two-and-a-half page response containing unsupported accusations that Defendant's motion is a "frivolous pleading ... that ... contradicts positions contained in [Defendant's] other pleadings and requests reconsideration of [a] motion previously denied." (Pls.' Resp. ¶ 8.) Plaintiffs have no response to Defendant's motion for summary judgment on their intentional tort claim.

### i. Plaintiff's negligence claim for relief

According to the Worker's Disability Compensation Act,

> The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort.

M.C.L. § 418.131(1). The question before the Court is whether Defendant was Plaintiff's employer. If Defendant was Plaintiff's employer, then the Worker's Disability Compensation Act is Plaintiff's exclusive remedy, and Plaintiff cannot maintain his negligence claim for relief here.

Section 418.151 defines employers subject to the Worker's Disability Compensation Act and provides, in relevant part,

> The following constitutes employers subject to this act: ... [e]very person, firm, limited liability company, limited liability partnership, and private corporation, including any public service corporation, who has any person in service under any contract of hire, express or implied, oral or written. ...

M.C.L. § 418.151(b). Here, Defendant satisfies the statutory definition of employer because it is a corporation which had Plaintiff Manuel Lopez in service under a contract of hire, namely the so-called Oxygen Agreements.

Furthermore, Defendant is an employer under the so-called "economic realities test" used by Michigan state courts. The economic realities test examines the "totality of circumstances surrounding the work relationship" to determine whether an employer-employee relationship exists. *Andriacchi v. Cleveland Cliffs Iron Co.*, 174 Mich.App. 600, 605, 436 N.W.2d 707 (1989). This Court is guided by the following factors in analyzing the relationship between Plaintiff and Defendant: " '(1) control of a worker's duties, (2) payment of wages, (3) the right of hire, fire, and discipline, and (4) performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal.' " *Id.* (quoting *Parkkonen v. Cleveland Cliffs Iron Co.*, 153 Mich.App. 204, 209, 395 N.W.2d 289 (1986)). All of these factors are to be viewed cumulatively, "and no single factor conclusively establishes the existence or absence of an employer-employee relationship." *Andriacchi*, 174 Mich.App. at 606, 436 N.W.2d 707. Furthermore, Michigan courts have recognized that more than one entity can be considered a particular employee's employer for purposes of the Worker's Disability Compensation Act. *See, e.g.,*

*Kidder v. Miller–Davis Co.,* 455 Mich. 25, 41–42, 564 N.W.2d 872 (1997). Where a worker has a co-employer, both employers have been protected under the exclusive remedy provision of the Act. *Id.* at 42, 564 N.W.2d 872.

Whether an alleged employer controls a worker's duties includes factors such as whether the alleged employer requested the types of workers it needed, controlled the hours on the job, and determined where the workers would be working; whether it retained ultimate control over the work site; and whether it furnished the appropriate tools for the workers to perform their assigned tasks. *See Kidder,* 455 Mich. at 42–44, 564 N.W.2d 872. Defendant submitted evidence that Union Carbide, and not National Steel, gave Plaintiff his assignments, that Plaintiff's immediate supervisors were employed by Union Carbide, that Plaintiff reported to the Union Carbide facility, and that Union Carbide determined Plaintiff's hours. (Hardy Aff. ¶ 8; Hardy Dep. at 18–19.) Plaintiff responds that Union Carbide "did not have control over the Plaintiffs, they just worked at [Defendant's] plant." Plaintiff states, without supporting evidence, that National Steel did not relinquish control of its employees assigned to Union Carbide's plant and that Union Carbide could not delegate work that was not in accordance with the collective bargaining agreement to which it was not a party. Even if this were true, it does not create a genuine issue of material fact because Union Carbide could share control and could exercise that control within the limits of the collective bargaining agreement.

Plaintiff's paychecks were issued by National Steel, but that does not make National Steel Plaintiff's sole employer. The Oxygen Agreements submitted by Defendant show that between 1965 and 1988, Defendant Union Carbide reimbursed National Steel for most costs related to the hourly employees working at Union Carbide, including fringe benefits. According to the Michigan Supreme Court, the fact that a co-employer "did not directly pay the workers is a distinction without a difference." *Kidder,* 455 Mich. at 41, 564 N.W.2d 872. While the co-employer in *Kidder* reimbursed the other employer "dollar for dollar," unlike the instant case, that alone should not be determinative. If co-employers each paid half of an employee's wages, for example, neither should be disqualified as an employer simply because each paid less than the whole of the employee's wages. Although one of the Oxygen Agreements provided that the employees "shall remain employees" of National Steel "for purposes of wages and all employee benefits," that does not mean that the employees were not also employed by Union Carbide. In *Kidder,* the Michigan Supreme Court rejected the idea that the employment agreement alone was dispositive and controlling of the status of the parties and held that the contract "is but one factor to consider under the economic-reality test." 455 Mich. at 46, 564 N.W.2d 872.

Defendant admits that it did not have exclusive control to hire, fire, and discipline Plaintiff, but it submitted evidence showing that it had a significant role in these decisions. (Hardy Aff. ¶ 7; Hardy Dep. at 16–17.) If disciplinary actions became necessary, Union Carbide supervisors completed reports detailing the wrongful conduct and recommending disciplinary action. If the wrongful conduct implicated the safety of the employee or other workers, Union Carbide supervisors could order the employee to quit working and leave the premises. Union Carbide personnel took an active role in any grievance procedure that resulted from a disciplinary action. In response, Plaintiff denies Defendant's assertions, but does not offer evidence to support its denials; thus, Plaintiff has not shown that there is sufficient evidence to submit the issue of the right to hire, fire, and discipline employees to a jury.

Finally, the performance of Plaintiff's duties was "an integral part of the employ-

er's business toward the accomplishment of a common goal." According to Defendant, the very purpose of the Oxygen Agreements was to ensure that National Steel had an adequate supply of oxygen by supplementing its internal oxygen production with Union Carbide's production. (*See* Joy Aff. ¶ 6.) Plaintiff responds by stating, without supporting evidence, that Union Carbide was not National Steel's sole supplier of raw materials and National Steel was not Union Carbide's sole purchaser of Union Carbide's products, so the only common goal was making money. Plaintiff misconstrues the facts of this case because both National Steel and Union Carbide produced oxygen, ultimately for use in the steel manufacturing process, and, therefore, they were working toward the accomplishment of a common goal. Plaintiff's work was an integral part of accomplishing this goal.

Therefore, in light of the totality of circumstances surrounding the work relationship, this Court concludes that Defendant Union Carbide was Plaintiff Manuel Lopez's employer under the economic realities test.

Defendant contends that Plaintiff admitted that Union Carbide was his employer in the Amended Petition submitted to the Bureau which lists Union Carbide as the "alleged employer." Plaintiff apparently made that assertion in response to National Steel's assertion that Union Carbide was Plaintiff's employer and in order to protect Plaintiff's interests before the Bureau. In concluding that Union Carbide was Plaintiff's employer, this Court is not relying on Plaintiff's description of Union Carbide as Plaintiff's alleged employer.

Because Defendant is Plaintiff's employer, the Worker's Disability Compensation Act is Plaintiff's exclusive remedy against Defendant for a personal injury or occupational disease for any claim other than intentional tort, *see* M.C.L. § 418.131(1), and Plaintiff's negligence claim is thereby barred. Therefore, this Court will grant Defendant's Renewed Motion for Summary Judgment with respect to Plaintiff's negligence claim for relief.

### ii. Plaintiff's intentional tort claim for relief

As stated above, the only exception to the exclusive remedy of the Worker's Disability Compensation Act is for an intentional tort by the employer. *See* M.C.L. § 418.131(1). Section 418.131 defines an intentional tort as follows:

An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had *actual knowledge* that *an injury was certain to occur* and *willfully disregarded that knowledge.* The issue of whether an act was an intentional tort shall be a question of law for the court.

M.C.L. § 418.131(1) (emphasis added).

In interpreting the phrase "actual knowledge" under section 418.131(1), the Michigan Supreme Court had held that "constructive, implied, or imputed knowledge is not enough," "[n]or is it sufficient to allege that the employer should have known, or had reason to believe, that the injury was certain to occur." *Travis v. Dreis and Krump Manufacturing Co.*, 453 Mich. 149, 173, 551 N.W.2d 132 (1996); *see Bazinau v. Mackinac Island Carriage Tours*, 233 Mich.App. 743, 751, 593 N.W.2d 219 (1999).

In interpreting the phrase "an injury was certain to occur," the Michigan Supreme Court had held that a plaintiff must prove that "no doubt exists with regard to whether it will occur," which is "an extremely high standard." *Travis*, 453 Mich. at 174, 551 N.W.2d 132. Scientific proof of probability of injury or conclusory statements by experts are not enough to show the required level of certainty. *Id.*

In interpreting the phrase "willfully disregarded," the Michigan Supreme Court

had held that "[a]n employer is deemed to have possessed the requisite state of mind when it disregards actual knowledge that an injury is certain to occur." *Travis,* 453 Mich. at 179, 551 N.W.2d 132.

Defendant argues that summary judgment should be granted in its favor on Plaintiff's intentional tort claim because there is no evidence to support such a claim. In response, Plaintiff has not produced evidence that he was injured "as a result of a deliberate act of the employer" and that "the employer specifically intended an injury." Plaintiff has come forth with no evidence showing that Defendant Union Carbide had "actual knowledge" that Plaintiff's injury was "certain to occur" and that Defendant "willfully disregarded that knowledge." Indeed, Plaintiff has filed no response to Defendant's motion for summary judgment on the intentional tort claim and did not argue against granting summary judgment on that claim at oral argument.

Therefore, this Court will grant Defendant's Renewed Motion for Summary Judgment with respect to Plaintiff's intentional tort claim for relief.

Plaintiff Karen Lopez's claims are dependent on Plaintiff Manuel Lopez's ability to maintain claims against Defendant, *see Long,* 219 Mich.App. at 589, 557 N.W.2d 157; *Moss,* 183 Mich.App. at 583, 455 N.W.2d 339, so Plaintiff Karen Lopez's claims also are dismissed.

### Conclusion

Accordingly, this Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment on Guadalupe and Eva Lopez's Claims Only [Docket Entry 85] is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Renewed Motion for Summary Judgment [Docket Entry 90] is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED.**

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED** without prejudice as moot.

**SO ORDERED.**